UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

2011 FEB 16  PM 2: 27

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | |
|---|---|
| ZIMMER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3: 11 - CV - 63  WLL |
| | ) |
| ARI KRESCH, KRESCH/OLIVER PLLC, | ) |
| KRESCH LEGAL SERVICES, P.L.C., | ) |
| PULASKI & MIDDLEMAN, L.L.C., | ) |
| and WELLER, GREEN, | ) |
| TOUPS & TERRELL, L.L.P. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff Zimmer, Inc. ("Zimmer"), based in Warsaw, Indiana, develops, manufactures and sells artificial knees, hips, and other orthopedic devices.  The Zimmer *NexGen*® Knee System, introduced in 1994, is Zimmer's leading knee implant system.  Today, more than forty different knee products bear the *NexGen*® brand name.  Defendants are lawyers and law firms based in Texas and Michigan. Through correspondence and internet and television advertising, defendants are making false and defamatory statements to the public including Zimmer customers and potential customers that the *NexGen*® Knee System has a high failure rate, causes pain, and is otherwise defective.  Defendants are making these statements knowingly, in order to attract potential clients for personal injury cases.  Zimmer brings this action to remedy the resulting harm and to prevent future harm.

## Parties And Jurisdiction

2.     Zimmer is a Delaware corporation with its principal place of business in Kosciusko County, Indiana.

3.     Ari Kresch is a lawyer admitted in Michigan and a citizen of the state of Michigan.

4.     Ari Kresch made the defamatory statements alleged in this Complaint while acting on his own behalf and on behalf of Kresch/Oliver PLLC and Kresch Legal Services, P.L.C.

5.     Kresch/Oliver PLLC is a plaintiffs' law firm owned in whole or in part by Ari Kresch. Kresch/Oliver PLLC is established under the laws of the state of Michigan and has its principal place of business in the state of Michigan. No member of Kresch/Oliver PLLC is an Indiana citizen.

6.     Kresch Legal Services, P.L.C. is a plaintiffs' law firm owned in whole or in part by Ari Kresch. Kresch Legal Services, P.L.C. is established under the laws of the state of Michigan and has its principal place of business in the state of Michigan. No member of Kresch Legal Services, P.L.C. is an Indiana citizen. (Ari Kresch, Kresch/Oliver PLLC and Kresch Legal Services, P.L.C. are referred to collectively as the "Kresch Defendants.")

7.     Pulaski & Middleman, L.L.C. ("Pulaski") is a plaintiffs' law firm incorporated under and with its principal place of business in Texas. No member of Pulaski is an Indiana citizen.

8.     Weller, Green, Toups & Terrell, L.L.P ("Weller") is a plaintiffs' law firm organized under and with its principal place of business in Texas. No partner of Weller is an Indiana citizen.

2

9.     The Kresch Defendants, Pulaski and Weller are subject to the long-arm jurisdiction of this Court based on their conduct of letter writing and internet and television advertising campaigns targeted at and injuring Zimmer, which defame Zimmer, tortiously interfere with its business relationships, misrepresent Zimmer and its products and infringe on Zimmer's trademarks, copyrights and domain names, all as set forth in more detail below. The campaigns are also targeted at existing and potential customers residing in Indiana and elsewhere.

10.    Defendants intended the false and misleading statements set forth below to impact the state of Indiana. Defendants distributed these statements over electronic channels and by mail into the state of Indiana, and intended thereby to affect the interests of Zimmer, which is based in Indiana, and of actual and potential Indiana recipients of Zimmer implants.

11.    The amount in controversy in this case exceeds the sum or value of $75,000 exclusive of interest and costs.

12.    This Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. The state law claims asserted herein are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue of this case is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c).

### Background Facts

13.    Zimmer is a leading manufacturer and seller of artificial orthopedic implants. Zimmer's leading knee replacement system is the *NexGen*® Knee Replacement System ("*NexGen*® Knee System"). Since 1994, more than three million *NexGen*® Knee System components have been implanted in patients worldwide. Zimmer's *NexGen*® Knee

System components consistently demonstrate among the lowest rate of revision in national joint replacement registries around the world.

14. These data reflecting the high performance of the *NexGen*® Knee System were collected independent of Zimmer and are publicly available.

15. Beginning in earnest in 2010, certain members of the bar, including defendants in this action, began aggressive advertisements directed at Zimmer and its *NexGen*® Knee System.

16. However, instead of accurately informing potential claimants regarding the performance of the *NexGen*® Knee System, defendants' advertisements against Zimmer and its *NexGen*® Knee System make false and misleading statements of fact and are otherwise grossly misleading regarding the performance of the Zimmer *NexGen*® Knee System. Contradicting excellent independent publicly-available scientific data to the contrary, these advertisements intentionally, recklessly or negligently convey the false implication that the Zimmer *NexGen*® Knee System implants are failing at an alarming and excessive rate, causing pain and other hardship to significant numbers of patients.

17. Defendants through these advertisements intend to and do cause needless fear, anxiety and apprehension among patients with Zimmer *NexGen*® Knee System implants. The defendants' false and misleading statements have also caused great unnecessary apprehension and concern among surgeons and have damaged Zimmer's reputation generally.

**Kresch Defendants:   "www.1800lawfirm.com"**

18. The Kresch Defendants established and control a website and an 800 number for recruiting and referring plaintiffs in personal injury products cases. The Ari Kresch page on the Kresch/Oliver PLLC website (www.krescholiver.com) states that Mr. Kresch is an experienced personal injury lawyer who has established the website "www.1800lawfirm.com" as

part of his network of plaintiffs' lawyers throughout the country. Callers to the toll free number 1-800-law-firm are directed to a call center near the Kresch/Oliver PLLC office in Southfield, Michigan and screened for forwarding to lawyers including the Kresch Defendants.

19. The Kresch Defendants also directly and through intermediaries established and have operated a website known as www.zimmernexgenkneereplacement.com. Searches on Google or other internet search engines for phrases such as "Zimmer knee" or "NexGen knee," among others, direct users to one or more of the sites operated by the Kresch Defendants (the "Kresch Websites").

20. As set forth in more detail at paragraph 27 below, the www.zimmernexgenkneereplacement.com website also wrongfully used the Zimmer name and graphics to which Zimmer has copyright and trademark rights, all to lure patients, potential patients and other Zimmer customers to the website.

21. A page on the Kresch Defendants' www.1800lawfirm.com website, a true and accurate copy of the quoted part of which is attached hereto as Exhibit A and incorporated herein by reference, states:

      (a)    "Research shows that 36% of patients who received NexGen® knee replacements experienced joint loosening."

      (b)    "Patients who received the NexGen® joints may experience joint failure at a higher rate than other joint types."

      (c)    Physicians presenting at the American Academy of Orthopedic Surgeons ("AAOS") "argued that 36% of patients who received the NexGen® joint experienced pain in their joint."

      (d)    "9% of patients who received the NexGen® joint had to undergo a second surgery after experiencing pain associated with the loosening of the joint."

5

        (e)    "In March of 2010 the FDA issued a class 2 recall of the Zimmer Nexgen Knee."

        22.    The Kresch Defendants have made similar false, misleading and

defamatory statements on their www.zimmernexgenkneereplacement.com website, a true and

accurate copy of the quoted part of which is attached hereto as Exhibit B and incorporated herein

by reference:

        (a)    "The FDA has issued a class 2 recall of the Zimmer NexGen knee."

        (b)    "March 2010: Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement."

        (c)    (In large letters): "Zimmer NexGen Knee Replacement Lawsuit" and "the Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!"

        23.    These and other similar statements on the Kresch Websites, and the

Kresch Websites as a whole, are false, misleading and defamatory. As set forth above, the

scientific evidence is that *NexGen®* joints perform better, not worse, than "other joint types."

No doctors "argued that 36% of patients who received" the *NexGen®* Knee System experienced

pain, and 9% of patients who received the joint did not undergo a second surgery. The physician

presentation mentioned in the Kresch Websites was a non-peer reviewed account of two doctors'

experience with 108 patients – accounting for a tiny fraction of the many thousands of patients

who received *NexGen®* Knee System components.

        24.    The loosening reported in those 108 patients was exclusively of a single

type of *NexGen®* Knee System component: the *NexGen®* CR-Flex Porous Femoral

Component. The advertisements falsely extrapolate the reported result from the 108-case AAOS

presentation not only to all *NexGen®* CR-Flex Porous Femoral Components but further to the

6

over three million total *NexGen*® Knee System components sold, all contrary to the published data. The publicly-available data on the *NexGen*® CR-Flex Porous Femoral Component demonstrate that it (like the *NexGen*® Knee System as a whole) has among the lowest revision rates for that product type.

25.     There has never been a recall of the entire *NexGen*® Knee System. Moreover, there has never been a recall of the *NexGen*® CR-Flex Porous Femoral Component at issue here.

26.     These false, misleading and defamatory statements are clearly and intentionally designed to mislead patients into reaching the false conclusion that the Zimmer *NexGen*® Knee System is dangerous and defective. They have frightened patients and have injured Zimmer's reputation and other interests.

**Kresch Defendants' Use of the ZIMMER Trademarks**

27.     Since at least as early as May 1927, Zimmer has used ZIMMER as a trademark (the "ZIM Marks"), in association with, *inter alia*, orthopedic products. Since at least as early as June 1964, Zimmer has used a stylized Z (collectively, the "Z Marks") in association with, *inter alia*, orthopedic products. Since at least as early as March 1994, Zimmer has used NEXGEN as a trademark, in some cases including a stylized form of the literal element NEXGEN (collectively, the "NEX Marks"), in association with orthopedic products. Collectively, the ZIM Marks, the Z Marks and the NEX Marks are referred to herein as the "ZIMMER Marks."

28.     Zimmer owns all right, title and interest in and to the ZIMMER Marks.

29.     The ZIMMER Marks have been featured in printed publications, on the Internet, and in other materials distributed throughout the United States.

7

30.     Zimmer has offered and provided to the public a full array of orthopedic products under the ZIMMER Marks.

31.     Zimmer uses the ZIMMER Marks in connection with orthopedic products that are provided to consumers in all fifty (50) states and the District of Columbia.

32.     The ZIMMER Marks are widely known and recognized among purchasers of Zimmer products.

33.     The ZIMMER Marks are unique and distinctive and, as such, designate a single source of origin for the orthopedic products.

34.     Zimmer's Internet website showing use of the ZIMMER Marks and featuring information on many of Zimmer's products can be accessed via the Internet domain zimmer.com. Printouts from Zimmer's website at zimmer.com evidencing use of the ZIMMER Marks are attached as Exhibit C and incorporated herein by reference.

35.     As a result of Zimmer's extensive and exclusive use with orthopedic products, the ZIMMER Marks have developed significant goodwill in the market and are extremely valuable to Zimmer.

36.     Zimmer expends substantial effort and expense to protect its ZIMMER Marks and their distinctiveness in the marketplace.

37.     Having been widely promoted to Zimmer's market, and having exclusively identified Zimmer and its products, the ZIMMER Marks symbolize the tremendous goodwill associated with Zimmer and are a property right of incalculable value.

38.     The ZIMMER Marks are valid and enforceable trademarks.

39.     Zimmer owns the following United States trademark registrations for its various ZIMMER Marks:

8

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|---|---|---|---|
| Zimmer | 647,921 | "Orthopedic appliances and fracture equipment" in int'l class 10 | July 2, 1957 |
| Zimmer | 1,778,807 | "Full line of surgical instruments and apparatuses" in Int'l Class 10 | June 19, 1993 |
|  | 1,707,954 | "House mark for a full line of surgical instruments and apparatuses" in Int'l Class 10 | August 18, 1992 |
|  | 1,326,797 | "Orthopedic, Surgical and General Medical Appliances, Instruments, and Equipment-Namely, Surgical Knives, Drills, Dermatomes, Wound Drainage Devices; Orthopedic Implants-Namely, Joint Prosthesis, Bone Plates, Bone Nails and Screws, Medullary Pins and Instruments Used to Insert Such Items; Traction Devices Including Traction Frames to Be Used to Apply to Hospital Beds; Rib Belts, Splints, Head Halters, Cervical Collars and Braces, Hand and Small Bone Surgical Instruments" in Int'l Class 10 | March 26, 1985 |
|  | 802,343 | "Orthopedic, surgical and general medical appliances, instruments and equipment-namely, surgical knives, drills, dermatones, surgical suction pumps; orthopedic implants-namely, | January 18, 1966 |

| | | | | |
|---|---|---|---|---|
| | | hip prosthesis, bone plates, bone nails and screws, medullary pins and instruments used to insert such items; traction devices including traction frames to be used to apply to hospital beds; rib belts, splints, head halters, cervical collars and braces, hand and small bone surgical instruments" in int'l class 10 | | |
| NEXGEN | 1,902,163 | "Surgical devices; namely, orthopedic knee prosthesis and instruments therefor" in Int'l Class 10 | June 27, 1995 |
| NexGen | 1,944,579 | "Surgical devices; namely, orthopedic knee prosthesis and instruments therefor" in Int'l Class 10 | December 26, 1995 |

40.     Copies of the registration certificates for each registration are attached to this Complaint as Exhibit D and incorporated herein by reference.

41.     Zimmer has not authorized the Kresch Defendants to use the ZIMMER Marks in any way.

42.     In November 2010, the Kresch Defendants or agents acting on their behalf registered the domain name zimmernexgenkneereplacement.com ("Infringing Domain Name").

43.     The Infringing Domain Name is confusingly similar to the ZIMMER Marks.

10

44.    The Kresch Defendants use the Infringing Domain Name to divert for commercial gain Internet users searching for the ZIMMER Marks and associated orthopedic products.

45.    The Kresch Defendants have operated a website at the Infringing Domain Name. Printouts from the website at the Infringing Domain Name showing such use by the Kresch Defendants are attached to this Complaint as Exhibit E and incorporated herein by reference.

46.    The Kresch Defendants were aware of the ZIMMER Marks when the Kresch Defendants created the website located at the Infringing Domain Name.

47.    The Kresch Defendants were aware that Zimmer owned the ZIMMER Marks displayed on the website located at the Infringing Domain Name.

48.    The Kresch Defendants were aware that Zimmer would suffer harm as a result of the Kresch Defendants' actions.

49.    The Kresch Defendants used the Infringing Domain Name, and its associated website, because the Kresch Defendants were aware of Zimmer's use of the ZIMMER Marks and the Kresch Defendants wanted to benefit and profit from the consumer goodwill related to the ZIMMER Marks.

50.    The Kresch Defendants' unauthorized registration and use of the Infringing Domain Name, and the material displayed on the associated website, is likely to cause confusion, mistake, and deception as to the source or origin of the Infringing Domain Name and the associated website, and is likely to falsely suggest a sponsorship, connection, license, or association of the Kresch Defendants, the Infringing Domain Name, and the associated website, with Zimmer.

11

51.     The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, Zimmer and its long-used and federally registered ZIMMER Marks.

52.     The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, the general public who has an inherent interest in being free from confusion, mistake, and deception.

**Pulaski:  "1-800-Bad-Drug"**

53.     Pulaski has distributed throughout the United States a television advertisement (the "Pulaski Spot") that solicits potential clients by making false, misleading and defamatory statements about Zimmer and the *NexGen®* Knee System.  Zimmer attaches hereto as Exhibit F and incorporates herein by reference true and accurate copies of two still images captured from the Pulaski Spot.

54.     The Pulaski Spot has flashing red boldfaced letters in front of a knee x-ray stating "**Zimmer NexGen Knee Implant WARNING**." It goes on to say "**Reports show the ZIMMER NEXGEN KNEE IMPLANT may have a failure rate of 9%.**" It tells listeners they may be entitled to compensation and advises them to call 1-800-Bad-Drug for a free consultation.

55.     Pulaski owns the 1-800-Bad-Drug toll-free number, and Pulaski's name appears at the end of the Pulaski Spot.

56.     The Pulaski Spot has aired in many United States markets including, without limiting the generality of the foregoing, Delaware, Georgia, Illinois, Indiana, Louisiana, Missouri and elsewhere.

57.     The Pulaski Spot makes false and misleading statements about the safety of the *NexGen®* Knee System and quotes a wildly exaggerated failure rate that is contradicted by all of the publicly available scientific evidence.

58.     Pulaski designed and published the Pulaski Spot with the intent of distributing false, misleading and defamatory material information about Zimmer nationwide, targeting Zimmer, the surgeons who utilized its products, and the joint replacement patients who received its product, in order to solicit clients.

**Weller: False and Misleading Letters**

59.     Weller recently sent a letter to healthcare professionals across the country regarding the *NexGen®* Knee System (the "Letter"). A true and accurate copy of one such letter is attached hereto as Exhibit G and incorporated herein by reference.

60.     The first sentence of the Letter reads:  "As you may be aware, numerous complaints have been asserted concerning, and Congress is investigating the safety of **Zimmer NexGen Knee Implants**." The Letter refers to Zimmer as the manufacturer of "defective knee implants."

61.     These statements, and the Letter itself, are false and misleading. Zimmer *NexGen®* products are neither "defective" nor the subject of "numerous complaints."

62.     Congress is not "investigating the safety of" these devices.

63.     The Letter flagrantly misrepresents and implies to Zimmer's valued customers nationwide that Zimmer's *NexGen®* brand of knees is defective and dangerous. The false and misleading statements in the Letter are badly damaging Zimmer's reputation among and business relationships with the recipient doctors and hospitals who are Zimmer's customers.

13

64.     Like the statements of the other defendants, the Letter also creates anxiety and fear in healthcare professionals who implant the *NexGen®* brand of knees to help their patients live a more pain free and vastly improved quality of life.

**Cease and Desist Letters**

65.     On January 14 and January 21, 2011, Zimmer sent letters to Pulaski and to the Kresch Defendants (through the Southfield, Michigan address for their website (www.1800lawfirm.com), and on February 3, 2011, Zimmer sent a letter to Weller, demanding that they cease and desist distributing the defamatory statements (the "Cease and Desist Letters").

66.     The Cease and Desist Letters expressly reminded defendants of some of the publicly available information proving the defendants' defamatory statements to be false and misleading.

67.     In response to the Cease and Desist Letters, Pulaski and the Kresch Defendants indicated they intended to make certain changes in their *NexGen®* advertising going forward.  However, any changes promised or executed have not removed all the false and misleading statements described above, and left intact the misleading implications of the websites and advertisements.

68.     Despite the Cease and Desist Letters, the defendants have continued to distribute defamatory statements.

**Damages**

69.     Defendants' dissemination of the false and defamatory statements has damaged and is damaging Zimmer's reputation causing it to lose sales and profits and otherwise interfering with its relationships with customers including patients, physicians and hospitals.

14

Many doctors and patients have communicated to Zimmer that the advertisements are causing them to consider using knee implants sold by Zimmer's competitors.

## Count I: Defamation

70.     Zimmer incorporates by reference the allegations in paragraphs 1 through 69 above.

71.     Defendants' statements are of and concerning Zimmer, and persons who read, hear, or have read or heard defendants' statements would reasonably understand the references therein to be references to Zimmer.

72.     Defendants' statements are defamatory *per se*.

73.     Defendants' statements imply that Zimmer's products are defective and impute misconduct in Zimmer's trade.

74.     Alternatively, defendants' statements are defamatory *per quod.*

75.     Defendants made the defamatory statements with malice, ill will, and a reckless disregard for their truth or falsity.

76.     Defendants made the defamatory statements with a negligent or malicious disregard for their truth or falsity.

77.     Defendants' statements were published on several occasions, including when sent by mail and when aired on television and published on the internet. Defendants knew and intended, or should have known, that the statements would be published repeatedly.

78.     Defendants' statements tend to harm Zimmer's reputation by lowering Zimmer in the community's estimation, and by deterring third persons from dealing or associating with Zimmer.

79.     Defendants made the defamatory statements for their own commercial purposes, to attract potential clients.

15

80. As a direct and proximate result of the above-described conduct by defendants, Zimmer has suffered general, presumed and special damages in an amount to be determined at trial, including without limitation damage to Zimmer's reputation, business with customers and standing in the community.

81. Defendants' conduct was oppressive, fraudulent and malicious and warrants an award of punitive damages to deter defendants and others similarly situated from engaging in such conduct in the future.

### Count II: Tortious Interference With Business Relationships

82. Zimmer incorporates by reference the allegations in paragraphs 1 through 81 above.

83. Zimmer has ongoing business relationships with its customers, including but not limited to surgeons and other physicians, hospitals, and patients. Defendants have knowledge of those relationships.

84. Defendants' statements have interfered with Zimmer's relations with its customers.

85. Defendants' interference was intentional, malicious, illegal, and without justification.

86. Zimmer has sustained damages as a result of defendants' wrongful interference with its customer relationships.

87. Defendants' conduct, as alleged above, constitutes malicious, oppressive, fraudulent, willful and wanton tortious behavior, in blatant and reckless disregard of Zimmer's rights, for which Zimmer should recover punitive damages in an amount sufficient to deter defendants and other persons similarly situated from engaging in future similar conduct.

16

### Count III: False Advertising And
### Unfair Competition Under The Lanham Act

88.    Zimmer incorporates by reference the allegations in paragraphs 1 through
87 above.

89.    Each defendant is engaged in an advertising campaign that contains false
and misleading statements in violation of Section 43(a) of the Lanham Act (15 U.S.C.
§ 1125(a)).

90.    These false and misleading statements are material because they are likely
to adversely affect consumer purchasing decisions with respect to Zimmer products, and have
misled and are misleading consumers and causing damages to Zimmer that cannot be fully
calculated.

91.    Unless this Court enjoins defendants from continuing to make these false
and misleading statements and orders their retraction, the false and misleading statements will
continue to harm the general public, which has an interest in being free from mistake and
deception.

92.    Unless this Court enjoins defendants from continuing to make these false
and misleading statements and orders their retraction, the false and misleading statements will
continue to cause Zimmer to suffer a loss of consumer confidence, sales, profits, reputation and
goodwill.

93.    Zimmer's reputation and goodwill have been irreparably harmed because
defendants' false and misleading statements deceive consumers and cause them to lose
confidence in Zimmer and its products.

94.    If defendants are permitted to continue to make such false and misleading statements, Zimmer will suffer further irreparable harm by the continued spread of false statements to consumers.

95.    Defendants' false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

96.    By reason of defendants' acts, Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by defendants.  Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

97.    By reason of defendants' willful acts, Zimmer is entitled to damages, which damages may be trebled under 15 U.S.C. § 1117.

98.    This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### Count IV:  Product Disparagement And
### Unfair Competition Under Common Law

99.    Zimmer incorporates by reference the allegations in paragraphs 1 through 98 above.

100.    Defendants' false and misleading statements constitute product disparagement and unfair competition in violation of common law.

101.    Defendants' false and misleading statements have misled and tend to mislead consumers to believe that Zimmer's *NexGen®* line of products is defective, that Zimmer has ignored or failed to correct the alleged defects, and that Zimmer is an irresponsible, dishonest and disreputable business.

102.     Defendants' false and misleading statements constitute willful, deliberate and reckless efforts to cause consumers to doubt the safety of and refrain from purchasing Zimmer's products.

103.     Defendants' false and misleading statements have caused Zimmer to lose sales and customers, and have caused Zimmer actual economic injury and irreparable injury to its goodwill, reputation and consumer confidence in Zimmer's products.

104.     Defendants' conduct is continuing and, unless defendants are enjoined from engaging in their wrongful conduct, Zimmer will continue to suffer irreparable injury and harm for which it has no adequate remedy at law.

## Count V:  Cybersquatting Under 15 U.S.C.
## § 1125(d) With Respect To The ZIMMER Marks

105.     Zimmer incorporates by reference the allegations in paragraphs 1 through 104 above.

106.     The Kresch Defendants registered and used the Infringing Domain Name (zimmernexgenkneereplacement.com).

107.     The ZIMMER Marks were distinctive, and federal registrations for the ZIMMER Marks existed, at the time the Kresch Defendants registered and used the Infringing Domain Name.

108.     The Infringing Domain Name is confusingly similar to the ZIMMER Marks.

109.     The Kresch Defendants registered and used the Infringing Domain Name in bad faith and with a bad-faith intent to profit from the goodwill long established by Zimmer in the ZIMMER Marks.

19

110. The Kresch Defendants do not have any intellectual property rights or any other rights in the ZIMMER Marks.

111. The Infringing Domain Name does not consist of the legal name of the Kresch Defendants, nor is it a name that is otherwise commonly used to identify the Kresch Defendants.

112. The Kresch Defendants have not made any *bona fide* fair use of the ZIMMER Marks on a website accessible under the Infringing Domain Name.

113. The Kresch Defendants registered and used the Infringing Domain Name to divert consumers from Zimmer's Internet website to a website accessible under the Infringing Domain Name for the Kresch Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website accessible under the Infringing Domain Name.

114. The Kresch Defendants' registration and use of the Infringing Domain Name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Zimmer to relief.

115. By reason of the Kresch Defendants' acts alleged herein, Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants. Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

116. By reason of the Kresch Defendants' acts alleged herein, Zimmer is entitled to recover actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Zimmer, in an amount of not less than One Thousand Dollars ($1,000) nor more than One Hundred Thousand Dollars ($100,000) per domain name infringement.

117.    This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## Count VI: Trademark Infringement
## Of The ZIMMER Marks Under 15 U.S.C. § 1114(1)

118.    Zimmer incorporates by reference the allegations in paragraphs 1 through 117 above.

119.    The Kresch Defendants' use in commerce of the ZIMMER Marks, the Infringing Domain Name, and the website displayed at the Infringing Domain Name, is likely to cause confusion, mistake, and to deceive.

120.    The Kresch Defendants' use of the ZIMMER Marks is likely to cause initial interest confusion among the general public.

121.    The above-described acts of the Kresch Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Zimmer to relief.

122.    The Kresch Defendants have unfairly profited from the infringing actions alleged.

123.    By reason of the Kresch Defendants' acts, Zimmer has suffered damage to the goodwill associated with the ZIMMER Marks.

124.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, Zimmer and its long-used and federally registered ZIMMER Marks.

125.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, the general public who has an interest in being free from confusion, mistake, and deception.

21

126.   By reason of the Kresch Defendants' acts, Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants. Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

127.   By reason of the Kresch Defendants' willful acts, Zimmer is entitled to damages, and that those damages be trebled under 15 U.S.C. § 1117.

128.   This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### Count VII: Unfair Competition And False Designation
### Of Origin Of The ZIMMER Marks Under 15 U.S.C. § 1125(a)

129.   Zimmer incorporates by reference the allegations in paragraphs 1 through 128 above.

130.   The Kresch Defendants' use in commerce of the ZIMMER Marks, the Infringing Domain Name, and its associated website, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that the Infringing Domain Name and the website displayed at the Infringing Domain Name are authorized, sponsored or approved by or are affiliated with Zimmer.

131.   The Kresch Defendants' use of the ZIMMER Marks, the Infringing Domain Name, and its associated website, is likely to cause initial interest confusion among the general public.

132.   The Kresch Defendants' acts described above constitute trademark infringement of the ZIMMER Marks and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Zimmer to relief.

133.   The Kresch Defendants have unfairly profited from the actions alleged.

134.    By reason of the Kresch Defendants' acts alleged herein, Zimmer has suffered damage to the goodwill associated with the ZIMMER Marks.

135.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an interest in being free from confusion, mistake, and deception.

136.    Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants.  Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

137.    By reason of the Kresch Defendants' willful acts, Zimmer is entitled to damages, and that those damages be trebled under 15 U.S.C. § 1117.

138.    This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### Count VIII: Unfair Competition And Trademark Infringement Of The ZIMMER Marks Under Common Law

139.    Zimmer incorporates by reference the allegations in paragraphs 1 through 138 above.

140.    The Kresch Defendants have used in commerce the ZIMMER Marks, the Infringing Domain Name, and associated website, in connection with its business.

141.    The Kresch Defendants' use in commerce of the ZIMMER Marks, the Infringing Domain Name, and associated website, in connection with the Kresch Defendants' business is likely to cause confusion or mistake or to deceive as to the source of origin of the Kresch Defendants' goods or services.

142.    The Kresch Defendants' acts described above constitute trademark infringement and unfair competition under the common law, entitling Zimmer to relief.

143.     The Kresch Defendant have unfairly profited from the actions alleged herein.

144.     By reason of the Kresch Defendants' acts alleged herein, Zimmer has suffered damage to the goodwill associated with the ZIMMER Marks and has suffered irreparable harm.

145.     Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants. Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief.

146.     Zimmer is informed and believes and on that basis alleges that the Kresch Defendants' conduct has been intentional and willful and in conscious disregard of Zimmer's rights.

WHEREFORE, Zimmer respectfully requests that the Court:

1.     After trial by jury, award Zimmer actual, presumed, special and punitive damages in amounts to be determined at trial;

2.     Enter an injunction enjoining defendants, their officers, agents, directors, employees, attorneys, representatives, affiliates, subsidiaries, servants, successors and assigns, and all those persons in active concert or participation with any of them or acting on their behalf, from the following acts:

(a)     Making any false, misleading, libelous, slanderous, defamatory, or disparaging statements or engaging in false, misleading or unfair trade practices or tortious interference with business relationships, including without limitation stating, claiming, suggesting, intimating or implying in any manner whatsoever that any of

24

Zimmer's *NexGen®* line of products is dangerous or defective or fails at an excessive rate or that Zimmer is an irresponsible, dishonest or disreputable business;

(b) Making any other false, misleading, slanderous, disparaging or defamatory statements about Zimmer, Zimmer's *NexGen®* Knee System, or any other Zimmer product; and

(c) Otherwise engaging in acts, either directly or through other entities, of false advertising, product disparagement, libel, slander, unfair and deceptive trade practices, unfair competition, or tortious interference with actual or prospective business relations;

3. Enter an order requiring defendants immediately to place corrective advertisements in a form, frequency and manner that is acceptable to Zimmer and the Court that expressly (1) notifies the public of the Court's findings and (2) apologizes for defendants' unlawful conduct;

4. Enter an order requiring defendants to notify, in a form and manner that is acceptable to Zimmer and the Court, the recipients of its false, misleading, defamatory, libelous, slanderous and disparaging statements that Zimmer's *NexGen®* line of products is not dangerous or defective or fails at an excessive rate, and to apologize for defendants' unlawful conduct;

5. Enter an order requiring defendants to file with the Court and serve upon Zimmer, within thirty (30) days after the entry of such order, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction, including, without limitation, the specific measures that were taken to ensure that (1) defendants' officers, salespersons, agents and employees have actual knowledge of the injunction and that said persons are in full compliance with the injunction, (2) the unlawful conduct that is the basis

for these claims does not continue to occur, and (3) the remedial action was taken against

defendants' officers, salespersons and employees on account of defendants' unlawful conduct;

6.     Declare that defendants' false, misleading, defamatory, libelous,

slanderous and disparaging statements were knowing and willful;

7.     Enter a judgment that the Kresch Defendants have:

(a)     Violated and infringed the rights of Zimmer in the ZIMMER Marks under

15 U.S.C. § 1125(d);

(b)     Violated and infringed the rights of Zimmer in the ZIMMER Marks under

15 U.S.C. § 1114(1);

(c)     Violated and infringed the rights of Zimmer in the ZIMMER Marks under

15 U.S.C. § 1125(a); and

(d)     Violated and infringed the rights of Zimmer in the ZIMMER Marks under

common law;

8.     Order that the Kresch Defendants transfer the Infringing Domain Name,

and every other domain name it owns which is identical or confusingly similar to the ZIMMER

Marks, to Zimmer;

9.     Order that the Kresch Defendants, its agents, representatives, employees,

assigns and suppliers, and all persons acting in concert or privity with the Kresch Defendants, be

enjoined from the following activities:

(a)     Registering or using, in any manner, any Internet domain name that

incorporates, in whole or in part, the ZIMMER Marks, or any name, mark or designation

confusingly similar thereto;

26

(b)     Using any of the ZIMMER Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether the Kresch Defendants are affiliated or associated with or sponsored by Zimmer;

(c)     Registering any Internet domain name that incorporates, in whole or in part, the ZIMMER Marks, or any name, mark or designation confusingly similar thereto;

(d)     Practicing trademark infringement, unfair competition, false designation of origin, passing off, false advertising, against Zimmer or misappropriation of Zimmer's trademark rights; and

(e)     Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above;

10.     Order that the Kresch Defendants engage in corrective advertising to the extent necessary to correct any consumer confusion or misperceptions resulting from the Kresch Defendants' unlawful acts complained of above;

11.     Order that the Kresch Defendants account to Zimmer for, and disgorge, all profits it has derived by reason of the unlawful acts complained of above;

12.     Order that the Kresch Defendants pay damages, and that those damages be trebled, under 15 U.S.C. § 1117;

13.     Order that the Kresch Defendants pay statutory damages under 15 U.S.C. § 1117(d), on election by Zimmer, in an amount of no less than One Thousand Dollars ($1,000) nor more than One Hundred Thousand Dollars ($100,000) per domain name infringement;

14.     Order that the Kresch Defendants pay Zimmer's reasonable attorney fees, prejudgment interest, and costs of this action under 15 U.S.C. § 1117 and common law;

27

15.     Order that the Kresch Defendants file with the Court and serve upon Zimmer a written report under oath setting forth in detail the manner and form in which the Kresch Defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon the Kresch Defendants;

16.     Award pre-judgment and post-judgment interest;

17.     Award Zimmer's costs and expenses, including without limitation Zimmer's reasonable attorneys' fees; and,

18.     Award all such other and further relief, in law or in equity, to which Zimmer may be entitled or which the Court deems just and proper.

BAKER & DANIELS LLP

By _____

*Attorneys for the Plaintiff, Zimmer, Inc.*

Joseph H. Yeager, Jr. (#2083-49)
April E. Sellers (#21081-49)
300 North Meridian Street
Suite 2700
Indianapolis, Indiana 46204
(317) 237-0300
(317) 237-1000 (fax)
jay.yeager@bakerd.com
april.sellers@bakerd.com

Angela Kelver Hall (#26991-71)
202 South Michigan Street
Suite 1400
South Bend, IN 46601
(574) 234-4149
(574) 239-1900 (fax)
angela.hall@bakerd.com

Abigail M. Butler (#22295-02)
Kyle B. Osting (#26532-02)
111 East Wayne Street
Suite 800
Fort Wayne, IN 46802
(260) 424-8000
(260) 460-1700 (fax)
abigail.butler@bakerd.com
kyle.osting@bakerd.com

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff, Zimmer,

Inc., demands a trial by jury in this action.

BAKER & DANIELS LLP

By _____

*Attorneys for the Plaintiff, Zimmer, Inc.*

Joseph H. Yeager, Jr. (#2083-49)
April E. Sellers (#21081-49)
300 North Meridian Street
Suite 2700
Indianapolis, Indiana 46204
(317) 237-0300
(317) 237-1000 (fax)
jay.yeager@bakerd.com
april.sellers@bakerd.com

Angela Kelver Hall (#26991-71)
202 South Michigan Street
Suite 1400
South Bend, IN 46601
(574) 234-4149
(574) 239-1900 (fax)
angela.hall@bakerd.com

Abigail M. Butler (#22295-02)
Kyle B. Osting (#26532-02)
111 East Wayne Street
Suite 800
Fort Wayne, IN 46802
(260) 424-8000
(260) 460-1700 (fax)
abigail.butler@bakerd.com
kyle.osting@bakerd.com

# EXHIBIT A







# EXHIBIT B

Zimmer Nexgen FDA Recall Alert | Zimmer NexGen Knee Replacement Lawsuit

# *Zimmer NexGen Knee Replacement Lawsuit*
## *The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!*

Contact an Attorney    Zimmer Nexgen Recall    NexGen Knee Implant    Zimmer Knee Replacement Failure

Home

## Zimmer Nexgen FDA Recall Alert

**January 20, 2011**

#### The FDA has issued a Class 2 recall of the Zimmer NexGen Knee.

This device is indicated for patients with severe knee pain and disability due to: Rheumatoid arthritis, osteoarthritis, traumatic arthritis, polyarthritis. Collage disorders, and/or avascular necrosis of the femoral condyle. Post-traumatic loss of joint configuration, particularly when there is patellofemoral erosion, dysfunction or prior patellectomy. Moderate valgus, varus, or flexion deformities. The salvage of previously failed surgical attempts or for a knee in which satisfactory stability in flexion cannot be obtained at the time of surgery. NexGen TM Tibial Trays may be used with or without bone cement (biological fixation). NexGen MIS Tibial Components and MIS Modular Tibial Plates and Keels are intended for cemented use only.

Contact An Attorney Today!

## Contact a Knee Implant Attorney

**Did you or your loved one have the Zimmer NexGen Knee Replacement installed?**

**Attorneys are standing by to speak with you NOW!** Submit the following form to be contacted regarding a potentially defective knee implant.

**First Name:**

**Last Name:**

**Address:**

**City:**

**Zipcode:**

**Email:**

**Home number:**

**Cell number:**

**Preferred time to call:**

| select |

**What MAKE was the replacement knee?:**

| Zimmer |

**What MODEL was the replacement knee?:**

### 1-855-5-NEXGEN

Call NOW (1-855-563-9436) to speak with an attorney regarding the Zimmer NexGen Knee Replacement. This is a TOLL-FREE call.

### Zimmer NexGen Knee Replacement





Zimmer Nexgen FDA Recall Alert | Zimmer NexGen Knee Replacement Lawsuit

| NexGen |

**Was the knee replacement implanted after January 1, 2002?:** *

| Yes |

**Comments or Questions:**

| Send |

# Zimmer NexGen Quick Facts

**March 2010:** Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement.

## Consult A Doctor For Medical Advice

The information contained on this website is not medical advice and is not intended to be medical advice. Nor is it a substitute for seeking appropriate medical, or other professional advice. Please discuss any health or other concerns with your doctor or other healthcare professional.

# EXHIBIT C





Welcome to Zimmer, the world leader in musculo-skeletal health. We're creators of innovative and personalized joint replacement technologies. After nearly a century, we remain true to our purpose of restoring mobility, alleviating pain, and helping millions of people around the world find renewed vitality.

Welcome to Zimmer.

▸ Patients and Caregivers

▸ Medical Professionals



## KNEE

Zimmer® NexGen® LPS-Flex Mobile and LPS Mobile Bearing Knees



**Product Description**

A Move Forward in Mobile Bearing Design

The *Zimmer NexGen* LPS-Flex Mobile and LPS-Mobile Bearing Knees provide an anteriorly positioned pivot near the entry point of the anterior cruciate ligament (ACL).

- An anterior pivot at the ACL site replicates the anatomic center of rotation[1,2]
- Anterior pivot design leads to lower patellofemoral forces that lead to anterior knee pain, patellar subluxation and dislocation, component wear, damage, and loosening[3,4]
- An anterior stop on the tibial plate prevents bearing spin-out and allows 25 degrees of unimpeded internal/external rotation

The LPS-Flex Mobile Bearing Knee Femoral Component has an enhanced cam/spine mechanism that is designed to provide stability at up to 155 degrees of active flexion.

- Deepened patellar groove delivers smooth patellar tracking, relieves pressure on the patella, and reduces forces that may cause patella clunk, pain, and premature wear
- Subluxation resistance increases at deep flexion angles as the cam moves down the spine
- Extended posterior flanges safely accommodate tibio-femoral contact during deep flexion

Wear

- Increased contact area/lower contact stresses
- Frontal plane conformity ratio

| LPS-Flex Mobile Bearing Knee | 1:1 |
|---|---|
| DePuy P.F.C* Sigma Rotating Platform | 1.03:1 |

- Sagittal plane conformity ratio at extension and low angles of flexion[5]

| Zimmer NexGen LPS-Flex Mobile Bearing Knee | 1.005:1 |
|---|---|
| DePuy P.F.C* Sigma Rotating Platform | 1.02:1 |

- Femoral radii are matched to size-specific articular surfaces
- Allowing only unidirectional rotational motion potentially reduces cross-shear and consequent wear[6]

NexGen® LPS-Flex Mobile & LPS-Mobile Bearing Knees                          Page 2 of 2

Refer to the package insert for indications, contraindications, warnings, precautions and adverse effects.

*P F C® is a trademark of Johnson & Johnson Corporation*

**Successful Clinical History**

The LPS-Flex Mobile Bearing Knee is supported by both clinical history and published study results.

- Ten years of successful clinical history in the European Union and Japan
- A study published in The Journal of Arthroplasty in 2010 reports a higher degree of postoperative flexion with the LPS-Flex Mobile Bearing Knee than with comparable mobile bearing designs reported in the literature[7]
- A study published in Clinical Orthopaedics and Related Research in 2004 reports patients with LPS-Flex Mobile Bearing Knee had similar kinematics patterns to the control patients with a healthy knee[8]
- A study published in the Journal of Biomechanics in 2005 reports implanted patella experienced similar kinematics to the non-implanted healthy knee[9]

**Product Brochure**

NexGen LPS-Flex Mobile and LPS Mobile Bearing Knee (US Only)

**References**

1. Argenson JN, Scuderi GR, Komistek RD, Scott WN, Kelly MA, Aubaniac JM. In vivo kinematic evaluation and design considerations related to high flexion in total knee arthroplasty. *J Biomech.* 2005;38(2):277-284.
2. Hollister AM, Jatana S, Singh AK, Sullivan WW, Lupichuk AG. The axes of rotation of the knee. *Clin Orthop Relat Res.* 1993;290:259-268.
3. Smith AJ, Lloyd DG, Wood DJ. Pre-surgery knee joint loading patterns during walking predict the presence and severity of anterior knee pain after total knee arthroplasty. *J Orthop Res.* 2004;22(2):260-266.
4. Browne C, Hermida JC, Bergula A, Colwell CW Jr, D'Lima DD. Patellofemoral forces after total knee arthroplasty: effect of extensor moment arm. *Knee.* 2005;12(2):81-88.
5. Gsell R. Yao JQ, Laurent MP, Crowninshield RD: Improved oxidation resistance of highly crosslinked UHMWPE for total knee arthroplasty. Society for Biomaterials 28th Annual Meeting Transactions, 542, 2002.
6. ZRR_WA_1577_06
7. Jones. V.C. et al. An experimental model of tibial counterface polyethylene wear in mobile bearing knees: The influence of design and kinematics. *Bio-medical Materials & Related Research,* 1999;9:189-196.
8. Tarabichi, S. et al. Achieving Deep Flexion After Primary Total Knee Arthroplasty. *Journal of Arthroplasty.* 2010; Vol.25,No 2,219-224.
9. Scuderi G.R. et al. In vivo kinematic evaluation and design considerations related to high flexion in total knee arthroplasty. Journal of Biomechanics. Number 38, pp 277-284. 2005.
10. Ranawat .C.S. "Design features of mobile-bearing knee implants", *Orthopedics Today,* Technical Monograph to the Dec. 2000 issue, 10-122, 2000

**Indications:** The NexGen® LPS-Flex/LPS-Mobile Bearing Knees are posterior-stabilized, cemented, knee prostheses indicated for patients with severe knee pain and disability due to osteoarthritis, traumatic arthritis, femoral avascular necrosis and moderate valgus, varus, or flexion deformities.

**Contraindications:** The device is contraindicated in patients with affected joint or systemic infection, insufficient bone stock, osteoporosis, skeletal immaturity or severe instability of the joint.

**Warnings:** Do not reuse (single patient use only). All 17 and 20mm articular surfaces require a locking screw. Use only NexGen all-polyethylene patellas with these mobile knees. Do not use; any damaged component, components from other knee systems, CR, CRA, CR-Flex or any porous components.

**Precautions:** Use sizing charts to correctly match components. Safety and effectiveness of this device has not been established in patients with rheumatoid arthritis, collagen disorders, polyarthritis, or pseudogout; or in patients who need a revision total knee replacement.

**Adverse Effects:** Implant loosening due to osteolysis, tibiofemoral subluxation or bearing disassembly, dislocation, joint instability or knee stiffness.

Refer to the package insert for indications, contraindications, warnings, precautions and adverse effects.

# EXHIBIT D

Int. Cl.: 10

Prior U.S. Cl.: 44

Reg. No. 647,921

**United States Patent and Trademark Office**

Registered July 2, 1957

10 Year Renewal

Renewal Term Begins July 2, 1997

## TRADEMARK
## PRINCIPAL REGISTER

## ZIMMER

ZIMMER, INC. (DELAWARE CORPORA-
TION)
727 NORTH DETROIT STREET
WARSAW, IN 46580, BY CHANGE OF
NAME, MERGER AND CHANGE OF
NAME AND CHANGE OF NAME
FROM ZIMMER MANUFACTURING
COMPANY (INDIANA CORPORA-
TION) WARSAW, IN

FOR: ORTHOPEDIC APPLIANCES
AND FRACTURE EQUIPMENT, IN
CLASS 44 (INT. CL. 10).

FIRST USE 5-0-1927; IN COMMERCE
5-0-1927.

SER. NO. 72-014,608, FILED 8-24-1956.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on May 6, 1997.*

COMMISSIONER OF PATENTS AND TRADEMARKS

**Int. Cl.: 10**

**Prior U.S. Cl.: 44**

**Reg. No. 1,778,807**

**United States Patent and Trademark Office** Registered June 29, 1993

## TRADEMARK
### PRINCIPAL REGISTER

## ZIMMER

ZIMMER, INC. (DELAWARE CORPORATION)
727 NORTH DETROIT STREET
WARSAW, IN 46580

FOR: FULL LINE OF SURGICAL INSTRU-
MENTS AND APPARATUSES, IN CLASS 10
(U.S. CL. 44).
FIRST USE 5-0-1927; IN COMMERCE
5-0-1927.

OWNER OF U.S. REG. NOS. 647,921, 1,633,088
AND OTHERS.

SEC. 2(F) AS TO "ZIMMER".

SER. NO. 74-180,267, FILED 6-27-1991.

JULIA A. HARDY, EXAMINING ATTORNEY

Int. Cl.: 10

Prior U.S. Cl.: 44

**United States Patent and Trademark Office**

Reg. No. 1,707,954
Registered Aug. 18, 1992

## TRADEMARK
### PRINCIPAL REGISTER



ZIMMER, INC. (DELAWARE CORPORATION)
727 NORTH DETROIT STREET
WARSAW, IN 46580

FOR: HOUSE MARK FOR A FULL LINE OF SURGICAL INSTRUMENTS AND APPARATUSES, IN CLASS 10 (U.S. CL. 44).

FIRST USE 0–0–1964; IN COMMERCE 0–0–1964.
OWNER OF U.S. REG. NOS. 1,326,797, 1,415,701 AND OTHERS.

SER. NO. 74–185,928, FILED 7–17–1991.

LINDA E. BLOHM, EXAMINING ATTORNEY

Int. Cl.: 10

Prior U.S. Cl.: 44

## United States Patent and Trademark Office

Reg. No. 1,326,797
Registered Mar. 26, 1985

## TRADEMARK
### Principal Register



Zimmer, Inc. (Delaware corporation)
727 N. Detroit St.
Warsaw, Ind. 46580

For: ORTHOPEDIC, SURGICAL AND GEN-
ERAL MEDICAL APPLIANCES, INSTRU-
MENTS, AND EQUIPMENT—NAMELY,
SURGICAL KNIVES, DRILLS, DERMATOMES,
WOUND DRAINAGE DEVICES; ORTHOPEDIC
IMPLANTS—NAMELY, JOINT PROSTHESIS,
BONE PLATES, BONE NAILS AND SCREWS,
MEDULLARY PINS AND INSTRUMENTS
USED TO INSERT SUCH ITEMS; TRACTION
DEVICES INCLUDING TRACTION FRAMES
TO BE USED TO APPLY TO HOSPITAL BEDS;
RIB BELTS, SPLINTS, HEAD HALTERS, CER-
VICAL COLLARS AND BRACES, HAND AND
SMALL BONE SURGICAL INSTRUMENTS, in
CLASS 10 (U.S. Cl. 44).

First use 1964; in commerce 1964.
Owner of U.S. Reg. No. 802,343.

Ser. No. 482,987, filed May 31, 1984.

ANDREW N. FRIEDMAN, Examining Attorney

# United States Patent Office

**802,343**
**Registered Jan. 18, 1966**

## PRINCIPAL REGISTER
## Trademark

Ser. No. 219,295, filed May 19, 1965



Zimmer Manufacturing Company (Indiana corporation) Warsaw, Ind.

For: ORTHOPEDIC, SURGICAL AND GENERAL MEDICAL APPLIANCES, INSTRUMENTS AND EQUIPMENT — NAMELY, SURGICAL KNIVES, DRILLS, DERMATONES, SURGICAL SUCTION PUMPS; ORTHOPEDIC IMPLANTS—NAMELY, HIP PROSTHESIS, BONE PLATES, BONE NAILS AND SCREWS, MEDULLARY PINS AND INSTRUMENTS USED TO INSERT SUCH ITEMS; TRACTION DEVICES INCLUDING TRACTION FRAMES TO BE USED TO APPLY TO HOSPITAL BEDS; RIB BELTS, SPLINTS, HEAD HALTERS, CERVICAL COLLARS AND BRACES, HAND AND SMALL BONE SURGICAL INSTRUMENTS—in CLASS 44.

First use June 16, 1964; in commerce July 1, 1964. Owner of Reg. Nos. 658,833, 661,710, and 791,482.

P. H. MOORE, *Examiner.*

**Int. Cl.: 10**

**Prior U.S. Cl.: 44**

**Reg. No. 1,902,163**

## United States Patent and Trademark Office   Registered June 27, 1995

### TRADEMARK
### PRINCIPAL REGISTER

## NEXGEN

ZIMMER, INC. (DELAWARE CORPORATION)
727 NORTH DETROIT ST.
WARSAW, IN 46850

FOR: SURGICAL DEVICES; NAMELY, OR-
THOPEDIC KNEE PROSTHESIS AND INSTRU-
MENTS THEREFOR, IN CLASS 10 (U.S. CL. 44).

FIRST   USE   3–25–1994;   IN   COMMERCE
3–25–1994.

SN 74–451,015, FILED 10–26–1993.

JOHN MICHOS, EXAMINING ATTORNEY

Int. Cl.: 10

Prior U.S. Cls.: 26, 39, and 44

**United States Patent and Trademark Office**

**Reg. No. 1,944,579**
Registered Dec. 26, 1995

## TRADEMARK
### PRINCIPAL REGISTER



ZIMMER, INC. (DELAWARE CORPORATION)
727 NORTH DETROIT ST.
WARSAW, IN 46850

    FOR: SURGICAL DEVICES; NAMELY, OR-
THOPEDIC KNEE PROSTHESIS AND INSTRU-
MENTS THEREFOR, IN CLASS 10 (U.S. CLS. 26,
39 AND 44).

FIRST USE 3–25–1994; IN COMMERCE
3–25–1994.
    THE STIPPLING IS A FEATURE OF THE
MARK AND DOES NOT INDICATE COLOR.

    SN 74–475,142, FILED 12–23–1993.

JOHN MICHOS, EXAMINING ATTORNEY

# EXHIBIT E

Zimmer Nexgen FDA Recall Alert | Zimmer NexGen Knee Replacement Lawsuit

# *Zimmer NexGen Knee Replacement Lawsuit*

## *The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!*

| Contact an Attorney | Zimmer Nexgen Recall | NexGen Knee Implant | Zimmer Knee Replacement Failure |

Home

## Zimmer Nexgen FDA Recall Alert

**January 20, 2011**

**The FDA has issued a Class 2 recall of the Zimmer NexGen Knee.**

This device is indicated for patients with severe knee pain and disability due to: Rheumatoid arthritis, osteoarthritis, traumatic arthritis, polyarthritis. Collage disorders, and/or avascular necrosis of the femoral condyle. Post-traumatic loss of joint configuration, particularly when there is patellofemoral erosion, dysfunction or prior patellectomy. Moderate valgus, varus, or flexion deformities. The salvage of previously failed surgical attempts or for a knee in which satisfactory stability in flexion cannot be obtained at the time of surgery. NexGen TM Tibial Trays may be used with or without bone cement (biological fixation). NexGen MIS Tibial Components and MIS Modular Tibial Plates and Keels are intended for cemented use only.

Contact An Attorney Today!

## Contact a Knee Implant Attorney

**Did you or your loved one have the Zimmer NexGen Knee Replacement installed?**

**Attorneys are standing by to speak with you NOW!** Submit the following form to be contacted regarding a potentially defective knee implant.

**First Name:** *

**Last Name:** *

**Address:**

**City:**

**Zipcode:** *

**Email:** *

**Home number:** *

**Cell number:**

**Preferred time to call:**

[ select... ]

**What MAKE was the replacement knee?:** *

[ Zimmer ]

**What MODEL was the replacement knee?:** *

### 1-855-5-NEXGEN

Call NOW (1-855-563-9436) to speak with an attorney regarding the Zimmer NexGen Knee Replacement. This is a TOLL-FREE call.

### Zimmer NexGen Knee Replacement





Zimmer Nexgen FDA Recall Alert | Zimmer NexGen Knee Replacement Lawsuit

NexGen

**Was the knee replacement Implanted after January 1, 2002?:** *

Yes

**Comments or Questions:**

Submit

## Zimmer NexGen Quick Facts

**March 2010:** Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement.

## Consult A Doctor For Medical Advice

The information contained on this website is not medical advice and is not intended to be medical advice. Nor is it a substitute for seeking appropriate medical, or other professional advice. Please discuss any health or other concerns with your doctor or other healthcare professional.

Contact a Knee Implant Attorney | Zimmer NexGen Knee Replacement Lawsuit

# Zimmer NexGen Knee Replacement Lawsuit
## *The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!*

Contact an Attorney | Zimmer Nexgen Recall | NexGen Knee Implant | Zimmer Knee Replacement Failure

## Contact a Knee Implant Attorney

**January 20, 2011**

**Did you or your loved one have the Zimmer NexGen Knee Replacement installed?**

**Attorneys are standing by to speak with you NOW!** Submit the following form to be contacted regarding a potentially defective knee implant.

**First Name:**

**Last Name:**

**Address:**

**City:**

**Zipcode:**

**Email:**

**Home number:**

**Cell number:**

**Preferred time to call:**

select...

**What MAKE was the replacement knee?:** *

Zimmer

**What MODEL was the replacement knee?:** *

NexGen

**Was the knee replacement implanted after January 1, 2002?:** *

Yes

**Comments or Questions:**

Submit

### 1-855-5-NEXGEN

Call NOW (1-855-563-9436) to speak with an attorney regarding the Zimmer NexGen Knee Replacement. This is a TOLL-FREE call.

### Zimmer NexGen Knee Replacement

**zimmer**

Zimmer NexGen Quick          Consult A Doctor For Medical Advice

Contact a Knee Implant Attorney | Zimmer NexGen Knee Replacement Lawsuit

## Facts

**March 2010:** Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement.

The information contained on this website is not medical advice and is not intended to be medical advice. Nor is it a substitute for seeking appropriate medical, or other professional advice. Please discuss any health or other concerns with your doctor or other healthcare professional.

NexGen Knee Implant | Zimmer NexGen Knee Replacement Lawsuit

# *Zimmer NexGen Knee Replacement Lawsuit*
## *The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!*

| Contact an Attorney | Zimmer Nexgen Recall | NexGen Knee Implant | Zimmer Knee Replacement Failure |

Home

## NexGen Knee Implant

**January 20, 2011**

**Zimmer made a modification to the surgical technique and instructions for use. They added a warning to fully cement and pressurize the anterior and posterior surfaces of the tibial component, and to strongly recommend the use of a drop down stem extension. This change was completed and approved on April 23, 2010.**

Contact An Attorney Today!

### Contact a Knee Implant Attorney

**Did you or your loved one have the Zimmer NexGen Knee Replacement installed?**

**Attorneys are standing by to speak with you NOW!** Submit the following form to be contacted regarding a potentially defective knee implant.

**First Name:**

**Last Name:** *

**Address:**

**City:**

**Zipcode:** *

**Email:**

**Home number:**

**Cell number:**

**Preferred time to call:**
[select]

**What MAKE was the replacement knee?:** *
[Zimmer]

**What MODEL was the replacement knee?:** *
[NexGen]

**Was the knee replacement implanted after January 1, 2002?:**
[Yes]

**Comments or Questions:**

### 1-855-5-NEXGEN

Call NOW (1-855-563-9436) to speak with an attorney regarding the Zimmer NexGen Knee Replacement. This is a TOLL-FREE call.

Zimmer NexGen Knee Replacement





NexGen Knee Implant | Zimmer NexGen Knee Replacement Lawsuit





## Zimmer NexGen Quick Facts

**March 2010:** Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement.

## Consult A Doctor For Medical Advice

The information contained on this website is not medical advice and is not intended to be medical advice. Nor is it a substitute for seeking appropriate medical, or other professional advice. Please discuss any health or other concerns with your doctor or other healthcare professional.

Privacy Policy Statement | Zimmer NexGen Knee Replacement Lawsuit

# *Zimmer NexGen Knee Replacement Lawsuit*
## *The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!*

| Contact an Attorney | Zimmer Nexgen Recall | NexGen Knee Implant | Zimmer Knee Replacement Failure |

Home
## Privacy Policy Statement
**January 20, 2011**

This is the web site of zimmernexgenkneereplacement.com.

Our postal address is
2000 Town Center #1900
Southfield, MI 48075

We can be reached via e-mail at info@zimmernexgenkneereplacement.com

For each visitor to our Web page, our Web server automatically recognizes only the consumer's domain name, but not the e-mail address (where possible).

We collect the e-mail addresses of those who communicate with us via e-mail, aggregate information on what pages consumers access or visit, information volunteered by the consumer, such as survey information and/or site registrations.

The information we collect is used to improve the content of our Web page, shared with agents or contractors who assist in providing support for our internal operations, shared with other reputable organizations to help them contact consumers for marketing purposes, disclosed when legally required to do so, at the request of governmental authorities conducting an investigation, to verify or enforce compliance with the policies governing our Website and applicable laws or to protect against misuse or unauthorized use of our Website, to a successor entity in connection with a corporate merger, consolidation, sale of assets or other corporate change respecting the Website.

With respect to cookies: We use cookies to record user-specific information on what pages users access or visit.

If you do not want to receive e-mail from us in the future, please let us know by sending us e-mail at the above address.

From time to time, we make the e-mail addresses of those who access our site available to other reputable organizations whose products or services we think you might find interesting. If you do not want us to share your e-mail address with other companies or organizations, please let us know by calling us at the number provided above.

From time to time, we make our customer e-mail list available to other reputable organizations whose products or services we think you might find interesting. If you do not want us to share your e-mail address with other companies or organizations, please let us know by calling us at the number provided above.

If you supply us with your postal address on-line you will only receive the information for which you provided us your address.

With respect to Ad Servers: We do not partner with or have special relationships with any ad server companies.

From time to time, we may use customer information for new, unanticipated uses not previously disclosed in our privacy notice. If our information practices change at some time in the future we will post the policy changes to our Web site to notify you of these

### 1-855-5-NEXGEN

Call NOW (1-855-563-9436) to speak with an attorney regarding the Zimmer NexGen Knee Replacement. This is a TOLL-FREE call.

### Zimmer NexGen Knee Replacement





http://www.zimmernexgenkneereplacement.com/privacy-policy-statement[1/20/2011 3:58:13 PM]

changes and we will use for these new purposes only data collected from the time of the policy change forward. If you are concerned about how your information is used, you should check back at our Web site periodically.
Customers may prevent their information from being used for purposes other than those for which it was originally collected by e-mailing us at the above address.

Upon request we provide site visitors with access to contact information (e.g., name, address, phone number) that we maintain about them .

Upon request we offer visitors the ability to have inaccuracies corrected in contact information.
Consumers can have this information corrected by sending us e-mail at the above address.

With respect to security: We have appropriate security measures in place in our physical facilities to protect against the loss, misuse or alteration of information that we have collected from you at our site.

If you feel that this site is not following its stated information policy, you may contact us at the above addresses or phone number.

Contact An Attorney Today!

# Contact a Knee Implant Attorney

**Did you or your loved one have the Zimmer NexGen Knee Replacement installed?**

**Attorneys are standing by to speak with you NOW!** Submit the following form to be contacted regarding a potentially defective knee implant.

**First Name:** *

**Last Name:** *

**Address:**

**City:**

**Zipcode:** *

**Email:** *

**Home number:** *

**Cell number:**

**Preferred time to call:**

select...

**What MAKE was the replacement knee?:** *

Zimmer

**What MODEL was the replacement knee?:** *

NexGen

**Was the knee replacement implanted after January 1, 2002?:** *

Yes

**Comments or Questions:**

Privacy Policy Statement | Zimmer NexGen Knee Replacement Lawsuit



## Zimmer NexGen Quick Facts

**March 2010:** Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement.

## Consult A Doctor For Medical Advice

The information contained on this website is not medical advice and is not intended to be medical advice. Nor is it a substitute for seeking appropriate medical, or other professional advice. Please discuss any health or other concerns with your doctor or other healthcare professional.

Zimmer Knee Replacement Failure | Zimmer NexGen Knee Replacement Lawsuit

# *Zimmer NexGen Knee Replacement Lawsuit*
## *The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!*

Contact an Attorney | Zimmer Nexgen Recall | NexGen Knee Implant | Zimmer Knee Replacement Failure

Home

## Zimmer Knee Replacement Failure

**January 20, 2011**

**Zimmer has received complaints of loosening of the NexGen knee implant requiring revision surgery. There have been 114 cases filed with the FDA reporting that the device loosened and the patient required additional surgery to replace the device.**

Contact An Attorney Today!

## Contact a Knee Implant Attorney

**Did you or your loved one have the Zimmer NexGen Knee Replacement installed?**

**Attorneys are standing by to speak with you NOW!** Submit the following form to be contacted regarding a potentially defective knee implant.

**First Name:** *

**Last Name:** *

**Address:**

**City:**

**Zipcode:** *

**Email:** *

**Home number:** *

**Cell number:**

**Preferred time to call:**

| select... |

**What MAKE was the replacement knee?:** *

| Zimmer |

**What MODEL was the replacement knee?:** *

| NexGen |

**Was the knee replacement implanted after January 1, 2002?:** *

| Yes |

**Comments or Questions:**

### 1-855-5-NEXGEN

Call NOW (1-855-563-9436) to speak with an attorney regarding the Zimmer NexGen Knee Replacement. This is a TOLL-FREE call.

### Zimmer NexGen Knee Replacement





Zimmer Knee Replacement Failure | Zimmer NexGen Knee Replacement Lawsuit



## Zimmer NexGen Quick Facts

**March 2010:** Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement.

## Consult A Doctor For Medical Advice

The information contained on this website is not medical advice and is not intended to be medical advice. Nor is it a substitute for seeking appropriate medical, or other professional advice. Please discuss any health or other concerns with your doctor or other healthcare professional.

# EXHIBIT F



# EXHIBIT G

07/10/2013 02 20 FAX                                                     ☑ 002/002

# WELLER, GREEN, TOUPS & TERRELL, L.L.P.

## Attorneys at Law

**MITCHELL A. TOUPS, LTD.'+**
**B. ADAM TERRELL"+**
**E. HART GREEN**
**STEVEN C. TOUPS, P.C.**

**JANNEY GORDON, CP**
Certified Paralegal
to Mitchell A. Toups, Ltd.

E-Mail: matoups@wgttlaw.com
jgordon@wgttlaw.com

Direct Fax: (409) 832-8577

**Beaumont Office:**
**BANK OF AMERICA TOWER**
**2615 CALDER STREET, SUITE 400**
**BEAUMONT, TX 77702**
(Principal Office)

**Mailing Address:**
**POST OFFICE BOX 350**
**BEAUMONT, TX 77704**
**(409) 838-0101**
Houston: (713) 626-1126

**EDWARD H. GREEN"**
Of Counsel

**GEORGE A. WELLER**
(1911-1988)

**"BOARD CERTIFIED**
**PERSONAL INJURY TRIAL LAW AND CIVIL TRIAL LAW**
**TEXAS BOARD OF LEGAL SPECIALIZATION**

**+BOARD CERTIFIED CIVIL TRIAL LAW**
**NATIONAL BOARD OF TRIAL ADVOCACY**

**"BOARD CERTIFIED PERSONAL INJURY TRIAL LAW**
**TEXAS BOARD OF LEGAL SPECIALIZATION**

## ADVERTISEMENT

January 27, 2011

Timothy Bopp MD
Bone& Joint Center
310 N. 9th St.
Bismarck, ND 58501

RE:    **Zimmer NexGen Knee Implants**

Dear Dr Bopp:

As you may be aware, numerous complaints have been asserted concerning, and Congress is investigating the safety of Zimmer NexGen Knee Implants. We obtained your name from the American Association of Hip and Knee Surgeons website. Accordingly, this letter is being sent to you and other physicians who are members of the American Association of Hip and Knee Surgeons to notify you that the law firm of Caddell & Chapman, along with Weller, Green, Toups & Terrell, L.L.P., have extensive experience in defective products litigation and are handling claims against Zimmer, Inc. and Zimmer Holdings, Inc. with regard to these knee implants.

Please understand that we intend to pursue only the manufacturers of the defective knee implants, Zimmer, Inc. and Zimmer Holdings, Inc. Should any of your patients request legal representation concerning the implantation of the knee implants, please consider forwarding them our firms' contact information which is set forth below. If necessary, we will be happy to pay for the cost of postage and mailing your clients our information.

Mr. Caddell was one of the lead lawyers in the Sulzer Hip Implant litigation, which is similar to this defective knee implant issue. Mr. Caddell's partner, Cynthia Chapman, recently served on the Plaintiffs' Steering Committee in the defective defibrillator litigation against Medtronic, which litigation involved the recall of a medical device. Similarly, I have successfully represented over 1000 plaintiffs against Vitek and Dow Corning, the manufacturers of Proplast-Teflon and Silastic implants for TMJ-related injuries resulting from those defective devices.

If you have any questions or concerns, please feel free to contact either Caddell & Chapman at 713-751-0400 or Mitchell A. Toups at 409-838-0101. For further, detailed information on Caddell & Chapman, you can access their website at www.caddellchapman.com.

Sincerely,

Mitchell A. Toups