IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZIMMER, INC.,                                    )
                                                 )
          Plaintiff,                             )
                                                 )
vs.                                              )          CAUSE NO. 3:11-CV-00063-RLM-CAN
                                                 )
ARI KRESCH, KRESCH/OLIVER PLLC,                  )
KRESCH LEGAL SERVICES, P.L.C.,                   )
WELLER, GREEN, TOUPS & TERRELL,                  )
L.L.P., GORDON, EDELSTEIN,                       )
KREPACK, GRANT, FELTON,                          )
GOLDSTEIN, LLP, THE MOODY LAW                    )
FIRM, INC., ROTTENSTEIN LAW                      )
GROUP, LLP, ELK & ELK                            )
                                                 )
          Defendants.                            )

**DEFENDANT, ELK & ELK'S ANSWERS TO PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND JURY DEMAND**

Defendant, Elk & Elk, by counsel, answer Plaintiffs' Second Amended Complaint as follows:

1.      Plaintiff Zimmer, Inc. ("Zimmer"), based in Warsaw, Indiana, develops, manufactures and sells artificial knees, hips, and other orthopedic devices. The Zimmer *NexGen*® Knee System, introduced in 1994, is Zimmer's leading knee implant system. Today, more than forty different knee products bear the *NexGen*® brand name. Defendants are lawyers and law fiarms based in Texas, Michigan, California, Virginia and Ohio. Through correspondence and internet, television and newspaper advertising, defendants are making false and defamatory statements to the public including Zimmer customers and potential customers that the *NexGen*® Knee System has a high failure rate, causes pain, has resulted in the recall of the product and is otherwise defective. Defendants are making these statements knowingly, in order to attract potential clients for personal injury cases. Zimmer brings this action to remedy the resulting harm and to prevent future harm.

> **ANSWER:**     Objection. ¶ 1 of the Complaint is an a narrative form. Without waiving said objection, this defendant admits that Zimmer, Inc., is a Delaware Corporation. It is without knowledge as to the allegations concerning the NexGen brand name. This defendant admits that it is an Ohio law firm. This defendant denies that it made any false and defamatory statements, and it further denies that Zimmer suffered any harm of the allegations set forth in paragraph one (1) of Plaintiffs' Second Amended Complaint.

## PARTIES AND JURISDICTION

2.      Zimmer is a Delaware corporation with its principal place of business in Kosciusko County, Indiana.

> **ANSWER:**      Defendant admits the allegations set forth in paragraph two (2) of Plaintiffs' Second Amended Complaint.

3.      Ari Kresch is a lawyer admitted in Michigan and a citizen of the state of Michiga.

> **ANSWER:**      Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph three (3) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

4.      Ari Kresch made the defamatory statements alleged in this Complaint while acting on his own behalf and on behalf of Kresch/Oliver PLLC and Kresch Legal Services, P.L.C.

> **ANSWER:**      Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph four (4) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

5.      Kresch/Oliver PLLC is a plaintiffs' law firm owned in whole or in part by Ari Kresch. Kresch/Oliver PLLC is established under the laws of the state of Michigan and has its principal place of business in the state of Michigan.  No member of Kresch/Oliver PLLC is an Indiana citizen.

> **ANSWER:**      Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph five (5) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

6.      Kresch Legal Services, P.L.C. is a plaintiffs' law firm owned in whole or in part by Ari Kresch.  Kresch Legal Services, P.L.C.  is established under the laws of the state of Michigan and has its principal place of business in the state of Michigan.  No member of Kresch Legal Services, P.L.C. is and Indiana citizen.  (Ari Kresch, Kresch/Oliver PLLC and Kresch Legal Services, P.L.C. are referred to collectively as the "Kresch Defendants."

> **ANSWER:**      Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph six (6) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

7.      Weller, Green, Toups & Terrell, L.L.P. ("Weller") is a plaintiffs' law firm organized under and with its principal place of business in Texas.  No partner of Weller is an Indiana citizen.

> **ANSWER:**      Defendant lacks sufficient information or knowledge regarding the truth or

falsity of the allegations set forth in paragraph seven (7) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

8.   Gordon, Edelstein, Krepack, Grant, Felton, Goldstein, LLP ("Gordon") is a plaintiffs' law firm organized under and with its principal place of business in California.  No partner of Gordon is an Indiana citizen.

**ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph eight (8) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

9.   The Moody Law Firm, Inc. ("Moody") is a plaintiffs' law firm incorporated in and with its principal place of business in Virginia, with offices in Virginia and Florida.

**ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph nine (9) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

10.   Rottenstein Law Group, LLP ("Rottenstein") is a plaintiffs' law organized under and with its principal place of business in New York.  No partner of Rottenstein is an Indiana citizen.

**ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph ten (10) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

11.   Elk & Elk ("Elk") is a plaintiffs' law firm organized under and with its principal place of business in Ohio.  No partner of Elk is an Indiana citizen.

**ANSWER:**   Defendant admits the allegations set forth in paragraph eleven (11) of Plaintiffs' Second Amended Complaint.

12.   The Kresch Defendants, Weller, Gordon, Moody, Rottenstein and Elk are subject to the long-arm jurisdiction of this Court based on their conduct of letter writing, and internet, newspaper and television advertising campaigns targeted at and injuring Zimmer, which defame Zimmer, tortiously  interfere with its business relationships, misrepresent Zimmer and it products and infringe on Zimmer's trademarks, copyrights and domain names, all as set forth in more detail below.  The campaigns are also targeted at existing and potential customers residing in Indiana and elsewhere.  Moody is also subject to the long-arm jurisdiction of this Court based on appearances its attorneys have made in Indiana courts.

**ANSWER:**   Defendant denies the allegations set forth in paragraph twelve (12) of Plaintiffs' Second Amended Complaint.

13.     Defendants intended the false and misleading statements set forth below to impact the state of Indiana.  Defendants distributed these statements over electronic channels and by mail into the state of Indiana, and intended thereby to affect the interests of Zimmer, which is based in Indiana, and of actual and potential Indiana recipients of Zimmer implants.

> **ANSWER:**   Defendant denies the allegations set forth in paragraph thirteen (13) of Plaintiffs' Second Amended Complaint.

14.     The amount in controversy in this case exceeds the sum or value of $75,000 exclusive of interest and costs.

> **ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph fourteen (14) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

15.     This Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.  The state law claims asserted herein are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.  Venue of this case is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c).

> **ANSWER:**   This defendant denies that this Court has jurisdiction pursuant to 15 U.S.C. § 1121.  In fact, there is no allegation that this defendant violated a registered trademark.  This defendant admits that diversity jurisdiction exists, and this defendant admits that the Court may exercise jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.  However, this defendant denies that the Court has personal jurisdiction over this defendant or that the District Court for the Northern District of Indiana is the appropriate district court for this action of the allegations set forth in paragraph fifteen (15) of Plaintiffs' Second Amended Complaint.

## BACKGROUND FACTS

16.     Zimmer is a leading manufacturer and seller of artificial orthopedic implants.  Zimmer's leading knee replacement system if the *NexGen*® Knee Replacement System ("*NexGen*® Knee System").  Since 1994, more than three million *NexGen*® Knee System components have been implanted in patients worldwide.  Zimmer's *NexGen*® Knee System components consistently demonstrate among the lowest rate of revision in national joint replacement registries around the world.

> **ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph sixteen (16) of Plaintiffs'

-4-

Second Amended Complaint so as to neither admit nor deny the same at this time.

17.     These data reflecting the high performance of the *NexGen*® Knee System were collected independent of Zimmer and are publicly available.

> **ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph seventeen (17) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

18.     Beginning in earnest in 2010, certain members of the bar, including defendants in this action, began aggressive advertisements directed at Zimmer and its *NexGen*® Knee System.

> **ANSWER:**   Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph eighteen (18) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

19.     However, instead of accurately informing potential claimants regarding the performance of the *NexGen*® Knee System, defendants' advertisements against Zimmer and its *NexGen*® Knee System make false and misleading statements of fact and are otherwise grossly misleading regarding the performance of the Zimmer *NexGen*® Knee System.  Contradicting excellent independent publicly-available scientific dataa to the contrary, these advertisements intentionally, recklessly or negligently convey the false implication that the Zimmer *NexGen*® Knee System implants are failing at an alarming and excessive rate, causing pain and other hardship to significant numbers of patients.

> **ANSWER:**   Defendant denies the allegations set forth in paragraph nineteen (19) of Plaintiffs' Second Amended Complaint.

20.     Defendants through these advertisements intend to and do cause needless fear, anxiety and apprehension among patients with Zimmer *NexGen*® Knee System implants.  The defendants' false and misleading statements have also caused great unnecessary apprehension and concern among surgeons and have damaged Zimmer's reputation generally.

> **ANSWER:**   Defendant denies the allegations set forth in paragraph twenty (20) of Plaintiffs' Second Amended Complaint.

**Kresch Defendants: "www.1800lawfirm.com"**

21.     The Kresch Defendants established and control a website and an 800 number for recruiting and referring plaintiffs in personal injury products cases.  The Ari Kresch page on the Kresch/Oliver PLLC website (www.krescholiver.com) states that Mr. Kresch is an experienced personal injury

-5-

lawyer who has established the website "www.1800lawfirm.com" as part of his network of plaintiffs' lawyers throughout the country. Callers to the toll free number 1-800-law-firm are directed to a call center near the Kresch/Oliver PLLC office in Southfield, Michigan and screened for forwarding to lawyers including the Kresch Defendants.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph twenty-one (21) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

22.    The Kresch Defendants also directly and through intermediaries established and have operated a website known as www.zimmeranexgenkneereplacement.com . Searches on Google or other internet search engines for phrases such as "Zimmer knee" or "NexGen knee," among others, direct users to one or more of the sites operated by the Kresch Defendants (the "Kresch Websites").

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph twenty-two (22) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

23.    As set forth in more detail at paragraph 30 below, the www.zimmeranexgenkneereplacement.com website also wronfully used the Zimmer name and graphics to which Zimmer has copyright and trademark rights, all to lure patients, potential patients and other Zimmer customers to the website.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph twenty-three (23) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

24.    A page on the Kresch Defendants' www.1800lawfirm.com website, a true and accurate copy of the quoted part of which is attached hereto as Exhibit A and incorporated herein by reference, states:

(a)    "Research shows that 36% of patients who received NexGen® knee replacement experienced joint loosening."

(b)    Patients who received the NexGen® joints may experience joint failure at a higher rate than other joint types.

(c)    Physicians presenting at the American Academy of Orthopedic Surgeons ("AAOS") argued that 36% of patients who received the NexGen® joint experienced pain in their joint.

(d)    "9% of patients who received the NexGen® joint had to undergo a second surgery after experiencing pain associated with the loosening of the joint."

(e)      "In March of 2010 the FDA issued a class 2 recall of the Zimmer Nexgen Knee."

       **ANSWER:**      There are no allegations against Elk & Elk in rhetorical paragraph twenty-four (24) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

25.      The Kresch Defendants have made similar false, misleading and defamatory statements on their www.zimmernexgenkneereplacement.com website, a true and accurate copy of the quoted part of which is attached hereto as Exhibit B and incorporated herein by reference:

(a)      "The FDA has issued a class 2 recall of the Zimmer NexGen knee."

(b)      "March 2010: Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement."

(c)      (In large letters): "Zimmer NexGen Knee Replacement Lawsuit" and "the Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!"

       **ANSWER:**      There are no allegations against Elk & Elk in rhetorical paragraph twenty-five (25) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

26.      These and other similar statements on the Kresch Websites, and the Kresch Websites as a whole, are false, misleading and defamatory.  As set forth above, the scientific evidence is that *NexGen*® joints perform better, not worse, than "other joint types."  No doctors "argued that 36% of patients who received" the *NexGen*® Knee System experienced pain, and 9% of patients who received the joint did not undergo a second surgery.  The physician presentation mentioned in the Kresch Websites was a non-peer reviewed account of two doctors' experience with 108 patients - accounting for a tiny fraction of the many thousands of patients who received *NexGen*® Knee System components.

       **ANSWER:**      There are no allegations against Elk & Elk in rhetorical paragraph twenty-six (26) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

27.      The loosening reported in those 108 patients ws exclusively of a single type of *NexGen*® Knee System component: the *NexGen*® CR-Flex Porous Femoral Component.  The advertisements falsely extrapolate the reported result from the 108-case AAOS presentation not only to all *NexGen*® CR-Flex Porous Femoral Component but further to the over three million total *NexGen*® Knee System components sold, all contrary to the published data.  The publicly-available data on the *NexGen*® CR-Flex Porous Femoral Component demonstrate that it (like the *NexGen*® Knee System as a whole) has among the lowesst revision rates for that product type.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph twenty-seven (27) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

28.   There has never been a recall on the entire *NexGen®* Knee System. Moreover, there has never been a recall of the *NexGen®* CR-Flex Porous Femoral Component at issue here.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph twenty-eight (28) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

29.   These false, misleading and defamatory statements are clearly and intentionally designed to mislead patients into reaching the false conclusion that the Zimmer *NexGen®* Knee System is dangerous and defective. They have frightened patients and have injured Zimmer's reputation and other interests.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph twenty-nine (29) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

## Kresch Defendants' Use of the ZIMMER Trademarks

30.   Since at least as early as May 1927, Zimmer has used ZIMMER as a trademark (the "ZIM Marks"), in association with, *inter alia*, orthopedic products. Since at least as early as June 1964, Zimmer has used a stylized Z (collectively, the "Z Marks") in association with, *inter alia*, orthopedic products. Since at least as early as March 1994, Zimmer has used NEXGEN as a trademark, in some cases including a stylized form of the literal element NEXGEN (collectively, the "NEX Marks"), in association with orthopedic products. Collectively, the ZIM Marks, the Z Marks and the NEX Marks are referred to herein as the "ZIMMER Marks."

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph thirty (30) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

31.   Zimmer owns all right, title and interest in and to the ZIMMER Marks.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph thirty-one (31) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

32.   The ZIMMER Marks have been featured in printed publications, on the Internet, and in other materials distributed throughout the United States.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph thirty-two (32) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

33.    Zimmer has offered and provided to the public a full array of orthopedic products under the ZIMMER Marks.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph thirty-three (33) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

34.    Zimmer uses the ZIMMER Marks in connection with orthopedic products that are provided to consumers in all fifty (50) states and the District of Columbia.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph thirty-four (34) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

35.    The ZIMMER Marks are widely known and recognized among purchasers of Zimmer products.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph thirty-five (35) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

36.    The ZIMMER Marks are unique and distinctive and, as such, designate a single source of origin for the orthopedic products.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph thirty-six (36) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

37.    Zimmer's Internet website showing use of the ZIMMER Marks and featuring information on many of Zimmer's products can be accessed via the Internet domain zimmer.com. Printouts from Zimmer's website at zimmer.com evidencing use of the ZIMMER Marks are attached as Exhibit C and incorporated herein by reference.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph thirty-seven (37) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

38.    As a result of Zimmer's extensive and exclusive use with orthopedic products, the ZIMMER, Marks have developed significant goodwill in the market and are extremely valuable to Zimmer.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph thirty-eight (38) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

39.    Zimmer expends substantial effort and expense to protect its ZIMMER Marks and their distinctiveness in the marketplace.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph thirty-nine (39) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

40.    Having been widely promoted to Zimmer's market, and having exclusively identified Zimmer and its products, the ZIMMER Marks symbolize the tremendous goodwill associated wit Zimmer and are property right of incalculable value.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty (40) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

41.    The ZIMMER Marks are valid and enforceable trademarks.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-one (41) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

42.    Zimmer owns the following United States trademark registrations for its various ZIMMER Marks:

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-two (42) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

43.    Copies of the registration certificates for each registration are attached to this Complaint as Exhibit D and incorporated herein by reference.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-three (43) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

44.    Zimmer has not authorized the Kresch Defendants to use the ZIMMER Marks in any way.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-four (44) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer

is necessary.

45.    In November 2010, the Kresch Defendants or agents acting on their behalf registered the domain name zimmernexgenkneereplacement.com ("Infringing Domain Name").

    **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-five (45) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

46.    The Infringing Domain Name is confusingly similar to the ZIMMER Marks.

    **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-six (46) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

47.    The Kresch Defendants use the Infringing Domain Name to divert for commercial gain Internet users searching for the ZIMMER Marks and associated orthopedic products.

    **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-seven (47) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

48.    The Kresch Defendants have operated a website at the Infringing Domain Name.  Printouts from the website at the Infringing Domain Name showing such use by the Kresch Defendants are attached to this Complaint as Exhibit E and incorporated herein by reference.

    **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-eight (48) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

49.    The Kresch Defendants were aware of the ZIMMER Marks when the Kresch Defendants created the website located at the Infringing Domain Name.

    **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph forty-nine (49) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

50.    The Kresch Defendants were aware that Zimmer owned the ZIMMER Marks displayed on the website located at the Infringing Domain Name.

    **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph fifty (50) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

51.    The Kresch Defendants were aware that Zimmer would suffer harm as a result of the Kresch Defendants' actions.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph fifty-one (51) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

52.    The Kresch Defendants used the Infringing Domain Name, and its associated website, because the Kresch Defendants were aware of Zimmer's use of the ZIMMER Marks and the Kresch Defendants wanted to benefit and profit from the consumer goodwill related to the ZIMMER Marks.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph fifty-two (52) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

53.    The Kresch Defendants' unauthorized registration and use of the Infringing Domain Name, and the material displayed on the associated website, is likely to cause confusion, mistake, and deception as to the source or origin of the Infringing Domain Name and the associated website, and is likely to falsely suggest a sponsorship, connection, license, or association of the Kresch Defendants, the Infringing Domain Name, and the associated website, with Zimmer.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph fifty-three (53) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

54.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, Zimmer and its long-used and federally registered ZIMMER Marks.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph fifty-four (54) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

55.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, the general public who has an inherent interest in being free from confusion, mistake, and deception.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph fifty-five (55) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

## Weller: False and Misleading Letters

56.     Weller recently sent a letter to healthcare professionals across the country regarding the *NexGen®* Knee System (the "Letter"). A true and accurate copy of one such letter is attached hereto as Exhibit F and incorporated herein by reference.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph fifty-six (56) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

57.     The first sentence of the Letter reads:  "As you may be aware, numerous complaints have been asserted concerning, and Congress is investigating the safety of **Zimmer NexGen Knee Implants**." The Letter refers to Zimmer as the manufacturer of "defective knee implants."

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph fifty-seven (57) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

58.     These statements, and the Letter itself, are false and misleading. Zimmer *NexGen®* products are neither "defective" nor the subject of "numerous complaints."

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph fifty-eight (58) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

59.     Congress is not "investigating the safety of" these devices.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph fifty-nine (59) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

60.     The Letter flagrantly misrepresents and implies to Zimmer's valued customers nationwide that Zimmer's *NexGen®* brand of knees is defective and dangerous. The false and misleading statements in the Letter are badly damaging Zimmer's reputation among and business relationships with the recipient doctors and hospitals who are Zimmer's customers.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph sixty (60) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

61.     Like the statements of the other defendants, the Letter also creates anxiety and fear in healthcare professionals who implant the *NexGen®* brand of knees to help their patients live a more pain free and vastly improved quality of life.

      **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph sixty-one (61) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

## Gordon:  False and Misleading Website and Electronic Communications

62.    Gordon recently sent an e-mail to healthcare professionals regarding the *NexGen*® Knee System (the "E-Mail").  A true and accurate copy of one such e-mail is attached hereto as Exhibit G and incorporated herein by reference.

      **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph sixty-two (62) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

63.    The headline to the e-mail reads:  "NexGen Knee Implants Recalled Due To Faulty Component."  The E-Mail further refers to a "recall of a component used in Zimmer Holding's NexGen CR-Flex Knee replacements."

      **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph sixty-three (63) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

64.    These statements, and the E-Mail itself, are false and misleading. Zimmer *NexGen*® products have not been "recalled due to a faulty component."

      **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph sixty-four (64) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

65.    Gordon established and controls a website for recruiting plaintiffs in personal injury products cases.  The website (www.geklaw.com) states that Gordon specializes in representing individuals who are seriously injured in various types of accidents.

      **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph sixty-five (65) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

66.    A page on the Gordon website, a true and accurate copy of the quoted part of which is attached hereto as Exhibit H and incorporated herein by reference, states:  "NexGen Knee Implants Recalled Due to Faulty Component."

**ANSWER:**     There are no allegations against Elk & Elk in rhetorical paragraph sixty-six (66) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

67.     The E-Mail and the Gordon website flagrantly misrepresent and imply to Zimmer's valued customers nationwide that Zimmer's *NexGen*® brand of knees contains faulty components and is subject to a recall due to these faulty components. The false and misleading statements in the E-Mail and on the Gordon website are badly damaging Zimmer's reputation among and business relationships with patients, doctors and hospitals who are Zimmer's customers and their patients.

**ANSWER:**     There are no allegations against Elk & Elk in rhetorical paragraph sixty-seven (67) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

68.     Like the statements of the other defendants, the E-Mail and the Gordon website also create anxiety and fear in healthcare professionals who implant the *NexGen*® brand of knees to help their patients live a more pain free and vastly improved quality of life and in the patients themselves.

**ANSWER:**     There are no allegations against Elk & Elk in rhetorical paragraph sixty-eight (68) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

## Moody:  False and Misleading Newspaper Advertisements

69.     Moody recently ran newspaper advertisements regarding Zimmer knee replacements (the "Moody Advertisement").  A true and accurate copy of one such newspaper advertisement is attached hereto as Exhibit I and incorporated herein by reference.

**ANSWER:**     There are no allegations against Elk & Elk in rhetorical paragraph sixty-nine (69) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

70.     The Moody Advertisement states:

(a)     In bold face, "**ZIMMER KNEE REPLACEMENT ALERT**;"

(b)     "Certain High-Flex Femoral Components made by Zimmer have been associated with increasing incidences of failure, revision knee surgery and painful loosening," and

(c)     "According to the American Academy of Orthopaedic Surgeons, the failure rate could be as high as 9%."

-15-

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph seventy (70) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

71.     These statements, and the Moody Advertisement itself, are false and misleading. The prominent reference to an **"ALERT"** falsely conveys the presence of high levels of danger and risk. The clinical experience to which the advertising refers is the report of two surgeons' limited experience with cementless use of a single component and in no way supports the statement that the component generally is "associated with increasing incidences of failure. . . ." And, the American Academy of Orthopaedic Surgeons has never made a statement about a 9% failure rate in any Zimmer knee, including any "High-Flex Femoral Components" cited in the Newspaper Advertisement.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph seventy-one (71) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

72.     The Moody Advertisement flagrantly misrepresents and implies to Zimmer's valued customers nationwide that according to the American Academy of Orthopaedic Surgeons, certain of Zimmer's High-Flex Femoral Components could have a failure rate as high as 9%. The false and misleading statements in the Moody Advertisement are badly damaging Zimmer's reputation among and business relationships with patients, and doctors and hospitals who are Zimmer's customers.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph seventy-two (72) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

73.     Like the statements of the other defendants, the Moody Advertisement also creates anxiety and fear in healthcare professionals who implant Zimmer knees, including certain High-Flex Femoral Components, to help their patients live a more pain free and vastly improved quality of life and in the patients themselves.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph seventy-three (73) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

74.     Moody designed the Moody Advertisement with the intent of distributing false, misleading and defamatory information about Zimmer, targeting Zimmer, the surgeons who utilized its products, and the joint replacement patients who received its products, in order to solicit clients.

> **ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph seventy-four (74) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

-16-

**Rottenstein:  False and Misleading Websites and Videos**

75.    Rottenstein established and controls multiple websites for recruiting plaintiffs in personal injury products cases.

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph seventy-five (75) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

76.    The Rottenstein controlled websites include, but are not limited to the following websites:

(a)    www.zimmernexgenkneerecall.com

(b)    www.nexgenrecall.net

(c)    www.zimmer-nexgen-recall.com

(d)    http://www.zimmerkneelaw.com/updates

These and the other Rottenstein controlled websites addressing Zimmer and any *NexGen®* knee are hereafter referred to as the  "Rottenstein Websites").

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph seventy-six (76) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

77.    Pages on the Rottenstein Websites, true and accurate copies of the quoted parts of which are attached hereto as Exhibits J-M and incorporated herein by reference, state the following:

(a)    "Zimmer NexGen Knee Replacement Recall Info Center"

(b)    "The Zimmer NexGen CR-Flex Knee Replacement causes severe side effects"

(c)    "Some studies estimate that such loosening could be a problem in up to 36% of NexGen patients"

(d)    "Zimmer NexGen knees high failure rate"

> **ANSWER:**    There are no allegations against Elk & Elk in rhetorical paragraph seventy-seven (77) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

78.    Rottenstein also created and maintains a YouTube video for recruiting plaintiffs in personal injury products cases.  The Rottenstein YouTube video can be found at: http://www.youtube.com/watch?v=6Z01xvHnM20.   Zimmer attaches hereto as Exhibit N and incorporates herein by reference a true and accurate copy of a still image captured from the Rottenstein YouTube video.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph seventy-eight (78) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

79.    The Rottenstein YouTube video makes the following statements in bright red letters flashing across the screen:

(a)    "Zimmer NexGen Knees High Failure Rate"
(b)    "Painful Side Effects:  Loosening and poor adhesion"

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph seventy-nine (79) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

80.    The Rottenstein Websites and the Rottenstein YouTube video flagrantly misrepresent and mislead to Zimmer's valued customers nationwide that Zimmer's *NexGen*® brand of knees contains faulty components and is subject to a recall due to these faulty components. The false and misleading statements on the Rottenstein Websites and Rottenstein YouTube video are damaging Zimmer's reputation among patients, and business relationships with doctors and hospitals who are Zimmer's customers.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph eighty (80) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

81.    The Rottenstein Websites and Rottenstein YouTube video also create anxiety and fear in healthcare professionals who implant the *NexGen*® brand of knees to help their patients live a more pain free and vastly improved quality of life and in the patients themselves.

> **ANSWER:**   There are no allegations against Elk & Elk in rhetorical paragraph eighty-one (81) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

82.    Rottenstein designed the Rottenstein Websites and the Rottenstein YouTube video with the intent of distributing false, misleading and defamatory information about Zimmer, targeting Zimmer, the surgeons who utilized its products, and the joint replacement patients who received its products, in order to solicit clients.

-18-

**ANSWER:** There are no allegations against Elk & Elk in rhetorical paragraph eighty-two (82) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

## Elk & Elk:  False and Misleading Television Advertisements and Websites

83.     Elk has distributed a television advertisement (the "Elk Spot") that solicits potential clients by making false, misleading and defamatory statements about Zimmer and the *NexGen®* Knee System, particularly the Zimmer *NexGen®* CR-Flex.

**ANSWER:** Defendant denies the allegations set forth in paragraph eighty-three (83) of Plaintiffs' Second Amended Complaint.

84.     The Elk spot states:  "Attention, the FDA issued a recall of certain components of the Zimmer NexGen CR-Flex knee replacement."

**ANSWER:** Defendant admits the allegations set forth in paragraph eighty-four (84) of Plaintiffs' Second Amended Complaint.

85.     While showing a picture of a knee x-ray in the background, the Elk Spot shows letters on the screen reading:  "Zimmer NexGen CR-Flex KNEE RECALL AFFECTS more than 68,000 products!"

**ANSWER:** Defendant admits the allegations set forth in paragraph eighty-five (85) of Plaintiffs' Second Amended Complaint.

86.     The Elk Spot goes on to show statements on the screen saying:

(a)     CLASS 2 RECALL Zimmer NexGen CR-Flex KNEE REPLACEMENT
(b)     RECALLED Zimmer NexGen CR-Flex KNEES cause:
•       PAIN IN THE KNEE AND JOINTS
•       TROUBLE WALKING AND STANDING
•       NEED TO REPLACE OR REVISE THE ZIMMER CR-FLEX

**ANSWER:** Defendant admits the allegations set forth in paragraph eighty-six (86) of Plaintiffs' Second Amended Complaint.

87.     Elk established and controls a website for recruiting plaintiffs in personal injury cases.  The website (www.elkandelk.com) states that Elk is a personal injury law firm that represents people burdened by injury (the "Elk Website").

**ANSWER:** Defendant admits the allegations set forth in paragraph eighty-seven (87) of Plaintiffs' Second Amended Complaint.

88.     A page on the Elk Website, a true and accurate copy of the quoted part of which is attached hereto as Exhibit O and incorporated herein by reference, states:  "The media have reported that some patients who received the Zimmer knee replacements reported to the U.S. Food & Drug Administration that the pain and discomfort of the NexGen CR-Flex® knee implant they were using became so severe they needed revision surgery within a year of the initial implant and, in most cases, researchers have found that the complications and eventual need for revision surgery arose from the implants coming loose from the bone sockets and surfaces into which they were inserted."

      **ANSWER:**     Defendant admits the allegations set forth in paragraph eighty-eight (88) of Plaintiffs' Second Amended Complaint.

89.     Another page on the Elk Website makes the following statements:

(a)     "According to the Ohio product defect lawyers at Elk & Elk, recipients of the NexGen knee implant may require secondary surgery to correct pain and other complications caused by the implant."

(b)     "The FDA is currently reviewing complaints of the Zimmer NexGen Knee Implant, which has a high failure rate."

      **ANSWER:**     Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph eighty-nine (89) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

90.     The Elk Spot and the Elk Website flagrantly misrepresent and imply to Zimmer's valued customers nationwide that Zimmer's *NexGen*® brand of knees and the *NexGen*® CR-Flex is defective and dangerous. The false and misleading statements in the Elk Spot and the Elk Website are badly damaging Zimmer's reputation among and business relationships with patients and the recipient doctors and hospitals who are Zimmer's customers.

      **ANSWER:**     Defendant denies the allegations set forth in paragraph ninety (90) of Plaintiffs' Second Amended Complaint.

91.     Like the statements of the other defendants, the Elk Spot and the Elk Website also create anxiety and fear in healthcare professionals who implant the *NexGen*® brand of knees and the *NexGen*® CR-Flex to help their patients live a more pain free and vastly improved quality of life and in the patients themselves.

      **ANSWER:**     Defendant denies the allegations set forth in paragraph ninety-one (91) of Plaintiffs' Second Amended Complaint.

92.     Elk designed the Elk Spot and Elk Website with the intent of distributing false, misleading and defamatory information about Zimmer, targeting Zimmer, the surgeons who utilized its products, and the joint replacement patients who received its products, in order to solicit clients.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph ninety-two (92) of Plaintiffs' Second Amended Complaint.

## Cease and Desist Letters

93.     On January 21, 2011, Zimmer sent a letter to the Kresch Defendants (through the Southfield, Michigan address for their website (www.1800lawfirm.com).  On January 31, 2001, Zimmer sent a letter to Rottenstein, demanding that they cease and desist distributing the defamatory statements. On February 3, 2011, Zimmer sent a letter to Weller, demanding that they cease and desist distributing the defamatory statements.  On March 11, 2011, Zimmer sent a letter to Moody demanding that they cease and desist distributing the defamatory statements.  On March 31, 2011, Zimmer sent a letter to Elk demanding that they cease and desist distributing the defamatory statements (the "Cease and Desist Letters").

> **ANSWER:**    This Defendant admits that on March 31, 2011, a letter was purportedly sent by Zimmer to Elk & Elk.  Elk & Elk is without knowledge as to remainder allegations set forth in paragraph ninety-three (93) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

94.     The Cease and Desist Letters expressly reminded those defendants of some of the publicly available information proving the defendants' defamatory statements to be false and misleading.

> **ANSWER:**    Defendant lacks sufficient information or knowledge regarding the truth or falsity of the allegations set forth in paragraph ninety-four (94) of Plaintiffs' Second Amended Complaint so as to neither admit nor deny the same at this time.

95.     In response to the Cease and Desist Letters, the Kresch Defendants and Rottenstein indicated they intended to make certain changes in their *NexGen*® advertising going forward.  However, any changes promised or executed have not removed all the false and misleading statements described above, and left intact the misleading implications of the websites and advertisements.

> **ANSWER:**    No allegation is set forth against this defendant in rhetorical paragraph ninety-five (95) of the Plaintiffs' Second Amended Complaint.  Accordingly, no answer is necessary.

96.     Despite the Cease and Desist Letters, the Kresch Defendants, Weller, Moody and Rottenstein have continued to distribute defamatory statements.

**ANSWER:** No allegation is set forth against this defendant in rhetorical paragraph ninety-six (96) of the Plaintiffs' Second Amended Complaint. Accordingly, no answer is necessary.

**Damages**

97. Defendants' dissemination of the false and defamatory statements has damaged and is damaging Zimmer's reputation causing it to lose sales and profits and otherwise interfering with its relationships with customers including patients, physicians and hospitals. Many doctors and patients have communicated to Zimmer that the advertisements are causing them to consider using knee implants sold by Zimmer's competitors.

**ANSWER:** Defendant denies the allegations set forth in paragraph ninety-seven (97) of Plaintiffs' Second Amended Complaint.

## COUNT I:  DEFAMATION

98. Zimmer incorporates by reference the allegations in paragraphs 1 through 97 above.

**ANSWER:** Defendant reincorporates by reference its responses to paragraphs 1 through 97 of Plaintiff's Second Amended Complaint.

99. Defendants' statements are of and concerning Zimmer, and persons who read, hear, or have read or heard defendants' statements would reasonably understand the references therein to be references to Zimmer.

**ANSWER:** Defendant denies the allegations set forth in paragraph ninety-nine (99) of Plaintiffs' Second Amended Complaint.

100. Defendants' statements are defamatory *per se*.

**ANSWER:** Defendant denies the allegations set forth in paragraph one hundred (100) of Plaintiffs' Second Amended Complaint.

101. Defendants' statements imply that Zimmer's products are defective and impute misconduct in Zimmer's trade.

**ANSWER:** Defendant denies the allegations set forth in paragraph one hundred one (101) of Plaintiffs' Second Amended Complaint.

102. Alternatively, defendants' statements are defamatory *per quod*.

**ANSWER:** Defendant denies the allegations set forth in paragraph one hundred two (102)

-22-

of Plaintiffs' Second Amended Complaint.

103.    Defendants made the defamatory statements with malice, ill will, and a reckless disregard for their truth or falsity.

      **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred three (103) of Plaintiffs' Second Amended Complaint.

104.    Defendants made the defamatory statements with a negligent or malicious disregard for their truth or falsity.

      **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred four (104) of Plaintiffs' Second Amended Complaint.

105.    Defendants' statements were published on several occasions, including when sent by mail and e-mail and when published in newspapers and on the internet.  Defendants knew and intended, or should have known, that the statements would be published repeatedly.

      **ANSWER:**    Objection.  Rhetorical paragraph one hundred five (105) of the Plaintiffs' Second Amended Complaint improperly assumes the statements were defamatory.  Without waiving said objection, this Defendant denies the allegations contained in rhetorical paragraph one hundred five (105) of Plaintiffs' Second Amended Complaint.

106.    Defendants' statements tend to harm Zimmer's reputation by lowering Zimmer in the community's estimation, and by deterring third persons from dealing or associating with Zimmer.

      **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred six (106) of Plaintiffs' Second Amended Complaint.

107.    Defendants made the defamatory statements for their own commercial purposes, to attract potential clients.

      **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred seven (107) of Plaintiffs' Second Amended Complaint.

108.    As a direct and proximate result of the above-described conduct by defendants, Zimmer has suffered general, presumed and special damages in an amount to be determined at trial, including without limitation damage to Zimmer's reputation, business with customers and standing in the community.

      **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred eight (108) of Plaintiffs' Second Amended Complaint.

109.    Defendants' conduct was oppressive, fraudulent and malicious and warrants an award of punitive damages to deter defendants and others similarly situated from engaging in such conduct in the future.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred nine (109) of Plaintiffs' Second Amended Complaint.

### COUNT II:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

110.    Zimmer incorporates by reference the allegations in paragraphs 1 through 109 above.

> **ANSWER:**    Defendant reincorporates by reference its responses to paragraphs 1 through 109 of Plaintiffs' Second Amended Complaint.

111.    Zimmer has ongoing business relationships with its customers, including but not limited to surgeons and other physicians, hospitals, and patients.  Defendants have knowledge of those relationships.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred eleven (111) of Plaintiffs' Second Amended Complaint.

112.    Defendants' statements have interfered with Zimmer's relations with its customers.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred twelve (112) of Plaintiffs' Second Amended Complaint.

113.    Defendants' interference was intentional, malicious, illegal, and without justification.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred thirteen (113) of Plaintiffs' Second Amended Complaint.

114.    Zimmer has sustained damages as a result of defendants' wrongful interference with its customer relationships.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred fourteen (114) of Plaintiffs' Second Amended Complaint.

115.    Defendants' conduct, as alleged above, constitutes malicious, oppressive, fraudulent, willful and wanton tortious behavior, in blatant and reckless disregard of Zimmer's rights, for which Zimmer should recover punitive damages in an amount sufficient to deter defendants and other persons similarly situated from engaging in future similar conduct.

-24-

**ANSWER:**   Defendant denies the allegations set forth in paragraph one hundred fifteen (115) of Plaintiffs' Second Amended Complaint.

## COUNT III:  FALSE ADVERTISING AND
## UNFAIR COMPETITION UNDER THE LANHAM ACT

116.   Zimmer incorporates by reference the allegations in paragraphs 1 through 115 above.

**ANSWER:**   Defendant reincorporates by reference its responses to paragraphs 1 through 115 of Plaintiff's Second Amended Complaint.

117.   Each defendant is engaged in an advertising campaign that contains false and misleading statements in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

**ANSWER:**   Defendant denies the allegations set forth in paragraph one hundred seventeen (117) of Plaintiffs' Second Amended Complaint.

118.   These false and misleading statements are material because they are likely to adversely affect consumer purchasing decisions with respect to Zimmer products, and have misled and are misleading consumers and causing damages to Zimmer that cannot be fully calculated.

**ANSWER:**   Defendant denies the allegations set forth in paragraph one hundred eighteen (118) of Plaintiffs' Second Amended Complaint.

119.   Unless this Court enjoins defendants from continuing to make these false and misleading statements and orders their retraction, the false and misleading statements will continue to harm the general public, which has an interest in being free from mistake and deception.

**ANSWER:**   Defendant denies the allegations set forth in paragraph one hundred nineteen (119) of Plaintiffs' Second Amended Complaint.

120.   Unless this Court enjoins defendants from continuing to make these false and misleading statements and orders their retraction, the false and misleading statements will continue to cause Zimmer to suffer a loss of consumer confidence, sales, profits, reputation and goodwill.

**ANSWER:**   Defendant denies the allegations set forth in paragraph one hundred twenty (120) of Plaintiffs' Second Amended Complaint.

121.   Zimmer's reputation and goodwill have been irreparably harmed because defendants' false and misleading statements deceive consumers and cause them to lose confidence in Zimmer and its products.

**ANSWER:**   Defendant denies the allegations set forth in paragraph one hundred twenty-

one (121) of Plaintiffs' Second Amended Complaint.

122.    If defendants are permitted to continue to make such false and misleading statements, Zimmer will suffer further irreparable harm by the continued spread of false statements to consumers.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred twenty-two (122) of Plaintiffs' Second Amended Complaint.

123.    Defendants' false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred twenty-three (123) of Plaintiffs' Second Amended Complaint.

124.    By reason of defendants' acts, Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by defendants.  Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred twenty-four (124) of Plaintiffs' Second Amended Complaint.

125.    By reason of defendants' willful acts, Zimmer is entitled to damages, which damages may be trebled under 15 U.S.C. § 1117.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred twenty-five (125) of Plaintiffs' Second Amended Complaint.

126.    This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

> **ANSWER:**    Defendant denies the allegations set forth in paragraph one hundred twenty-six (126) of Plaintiffs' Second Amended Complaint.

## COUNT IV:  PRODUCT DISPARAGEMENT AND
## UNFAIR COMPETITION UNDER COMMON LAW

127.    Zimmer incorporates by reference the allegations in paragraphs 1 through 126 above.

> **ANSWER:**    Defendant reincorporates by reference its responses to paragraphs 1 through 126 of Plaintiffs' Second Amended Complaint.

128.    Defendants' false and misleading statements constitute product disparagement and unfair

competition in violation of common law.

**ANSWER:**     Defendant denies the allegations set forth in paragraph one hundred twenty-eight (128) of Plaintiffs' Second Amended Complaint.

129.    Defendants' false and misleading statements have misled and tend to mislead consumers to believe that Zimmer's *NexGen®* line of products is defective, that Zimmer has ignored or failed to correct the alleged defects, and that Zimmer is an irresponsible, dishonest and disreputable business.

**ANSWER:**     Defendant denies the allegations set forth in paragraph one hundred twenty-nine (129) of Plaintiffs' Second Amended Complaint.

130.    Defendants' false and misleading statements constitute willful, deliberate and reckless efforts to cause consumers to doubt the safety of and refrain from purchasing Zimmer's products.

**ANSWER:**     Defendant denies the allegations set forth in paragraph one hundred thirty (130) of Plaintiffs' Second Amended Complaint.

131.    Defendants' false and misleading statements have caused Zimmer to lose sales and customers, and have caused Zimmer actual economic injury and irreparable injury to its goodwill, reputation and consumer confidence in Zimmer's products.

**ANSWER:**     Defendant denies the allegations set forth in paragraph one hundred thirty-one (131) of Plaintiffs' Second Amended Complaint.

132.    Defendants' conduct is continuing and, unless defendants are enjoined from engaging in their wrongful conduct, Zimmer will continue to suffer irreparable injury and harm for which it has no adequate remedy at law.

**ANSWER:**     Defendant denies the allegations set forth in paragraph one hundred thirty-two (132) of Plaintiffs' Second Amended Complaint.

## COUNT V:  CYBERSQUATTING UNDER 15 U.S.C.
## § 1125(D) WITH RESPECT TO THE ZIMMER MARKS

133.    Zimmer incorporates by reference the allegations in paragraphs 1 through 132 above.

**ANSWER:**     Defendant reincorporates by reference its responses to paragraphs 1 through 132 of Plaintiffs' Second Amended Complaint.

134.    The Kresch Defendants registered and used the Infringing Domain Name

(zimmernexgenkneereplacement.com).

-27-

**ANSWER:**   Rhetorical paragraph one hundred thirty-four (134) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

135.   The ZIMMER Marks were distinctive, and federal registrations for the ZIMMER Marks existed, at the time the Kresch Defendants registered and used the Infringing Domain Name.

**ANSWER:**   Rhetorical paragraph one hundred thirty-five (135) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

136.   The Infringing Domain Name is confusingly similar to the ZIMMER Marks.

**ANSWER:**   Rhetorical paragraph one hundred thirty-six (136) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

137.   The Kresch Defendants registered and used the Infringing Domain Name in bad faith and with a bad-faith intent to profit from the goodwill long established by Zimmer in the ZIMMER Marks.

**ANSWER:**   Rhetorical paragraph one hundred thirty-seven (137) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

138.   The Kresch Defendants do not have any intellectual property rights or any other rights in the ZIMMER Marks.

**ANSWER:**   Rhetorical paragraph one hundred thirty-eight (138) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

139.   The Infringing Domain Name does not consist of the legal name of the Kresch Defendants, nor is it a name that is otherwise commonly used to identify the Kresch Defendants.

**ANSWER:**   Rhetorical paragraph one hundred thirty-nine (139) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

140.   The Kresch Defendants have not made any *bona fide* fair use of the ZIMMER Marks on a website accessible under the Infringing Domain Name.

**ANSWER:**   Rhetorical paragraph one hundred forty (140) of the plaintiffs' Second

Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

141.     The Kresch Defendants registered and used the Infringing Domain Name to divert consumers from Zimmer's Internet website to a website accessible under the Infringing Domain Name for the Kresch Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website accessible under the Infringing Domain Name.

> **ANSWER:**     Rhetorical paragraph one hundred forty-one (141) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

142.     The Kresch Defendants' registration and use of the Infringing Domain Name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Zimmer to relief.

> **ANSWER:**     Rhetorical paragraph one hundred forty-two (142) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

143.     By reason of the Kresch Defendants' acts alleged herein, Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants. Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

> **ANSWER:**     Rhetorical paragraph one hundred forty-three (143) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

144.     By reason of the Kresch Defendants' acts alleged herein, Zimmer is entitled to recover actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Zimmer, in an amount of not less than One Thousand Dollars ($1,000) nor more than One Hundred Thousand Dollars ($100,000) per domain name infringement.

> **ANSWER:**     Rhetorical paragraph one hundred forty-four (144) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

145.     This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

> **ANSWER:**     Rhetorical paragraph one hundred forty-five (145) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

## COUNT VI: TRADEMARK INFRINGEMENT
## OF THE ZIMMER MARKS UNDER 15 U.S.C. § 1114(1)

146.    Zimmer incorporates by reference the allegations in paragraphs 1 through 145 above.

> **ANSWER:**    Defendant reincorporates by reference its responses to paragraphs 1 through 145 of Plaintiffs' Second Amended Complaint.

147.    The Kresch Defendants' use in commerce of the ZIMMER Marks, the Infringing Domain Name, and the website displayed at the Infringing Domain Name is likely to cause confusion, mistake, and to deceive.

> **ANSWER:**    Rhetorical paragraph one hundred forty-seven (147) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

148.    The Kresch Defendants' use of the ZIMMER Marks is likely to cause initial interest confusion among the general public.

> **ANSWER:**    Rhetorical paragraph one hundred forty-eight (148) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

149.    The above-described acts of the Kresch Defendants constitutes trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Zimmer to relief.

> **ANSWER:**    Rhetorical paragraph one hundred forty-nine (149) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

150.    The Kresch Defendants have unfairly profited from the infringing actions alleged.

> **ANSWER:**    Rhetorical paragraph one hundred fifty (150) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

151.    By reason of the Kresch Defendants' acts, Zimmer has suffered damage to the goodwill associated with the ZIMMER Marks.

> **ANSWER:**    Rhetorical paragraph one hundred fifty-one (151) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

152.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, Zimmer and its long-used and federally registered ZIMMER Marks.

> **ANSWER:**    Rhetorical paragraph one hundred fifty-two (152) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

153.    The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will irreparably harm, the general public who has an interest in being free from confusion, mistake, and deception.

> **ANSWER:**    Rhetorical paragraph one hundred fifty-three (153) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

154.    By reason of the Kresch Defendants' acts, Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants.  Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

> **ANSWER:**    Rhetorical paragraph one hundred fifty-four (154) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

155.    By reason of the Kresch Defendants' willful acts, Zimmer is entitled to damages, and that those damages be trebled under 15 U.S.C. § 1117.

> **ANSWER:**    Rhetorical paragraph one hundred fifty-five (155) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

156.    This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

> **ANSWER:**    Rhetorical paragraph one hundred fifty-six (156) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

### COUNT VII: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF THE ZIMMER MARKS UNDER 15 U.S.C. § 1125(A)

157.    Zimmer incorporates by reference the allegations in paragraphs 1 through 156 above.

> **ANSWER:**   Defendant reincorporates by reference its responses to paragraphs 1 through 156 of Plaintiffs' Second Amended Complaint.

158.   The Kresch Defendants' use in commerce of the ZIMMER Marks, the Infringing Domain Name, and its associated website, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that the Infringing Domain Name and the website displayed at the Infringing Domain Name are authorized, sponsored or approved by or are affiliated with Zimmer.

> **ANSWER:**   Rhetorical paragraph one hundred fifty-eight (158) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

159.   The Kresch Defendants' use of the ZIMMER Marks, the Infringing Domain Name, and its associated website, is likely to cause initial interest confusion among the general public.

> **ANSWER:**   Rhetorical paragraph one hundred fifty-nine (159) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

160.   The Kresch Defendants' acts described above constitute trademark infringement of the ZIMMER Marks and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Zimmer to relief.

> **ANSWER:**   Rhetorical paragraph one hundred sixty (160) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

161.   The Kresch Defendants have unfairly profited from the actions alleged.

> **ANSWER:**   Rhetorical paragraph one hundred sixty-one (161) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

162.   By reason of the Kresch Defendants' acts alleged herein, Zimmer has suffered damage to the goodwill associated with the ZIMMER Marks.

> **ANSWER:**   Rhetorical paragraph one hundred sixty-two (162) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

163.   The Kresch Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an interest in being free from confusion, mistake, and deception.

    **ANSWER:**   Rhetorical paragraph one hundred sixty-three (163) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

164.    Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants. Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

    **ANSWER:**   Rhetorical paragraph one hundred sixty-four (164) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

165.    By reason of the Kresch Defendants' willful acts, Zimmer is entitled to damages, and that those damages be trebled under 15 U.S.C. § 1117.

    **ANSWER:**   Rhetorical paragraph one hundred sixty-five (165) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

166.    This is an exceptional case making Zimmer eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

    **ANSWER:**   Rhetorical paragraph one hundred sixty-six (166) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

## COUNT VIII: UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT OF THE ZIMMER MARKS UNDER COMMON LAW

167.    Zimmer incorporates by reference the allegations in paragraphs 1 through 166 above.

    **ANSWER:**   Defendant reincorporates by reference its responses to paragraphs 1 through 166 of Plaintiffs' Second Amended Complaint.

168.    The Kresch Defendants have used in commerce the ZIMMER Marks, the Infringing Domain Name, and associated website in connection with their business.

    **ANSWER:**   Rhetorical paragraph one hundred sixty-eight (168) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

169.    The Kresch Defendants' use in commerce of the ZIMMER Marks, the Infringing Domain Name, and associated website, in connection with the Kresch Defendants' business is likely to cause

confusion or mistake or to deceive as to the source of origin of the Kresch Defendants' goods or services.

> **ANSWER:** Rhetorical paragraph one hundred sixty-nine (169) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

170. The Kresch Defendants' acts described above constitute trademark infringement and unfair competition under the common law, entitling Zimmer to relief.

> **ANSWER:** Rhetorical paragraph one hundred seventy (170) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

171. The Kresch Defendants have unfairly profited from the actions alleged herein.

> **ANSWER:** Rhetorical paragraph one hundred seventy-one (171) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

172. By reason of the Kresch Defendants' acts alleged herein, Zimmer has suffered damage to the goodwill associated with the ZIMMER Marks and has suffered irreparable harm.

> **ANSWER:** Rhetorical paragraph one hundred seventy-two (172) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

173. Zimmer's remedy at law is not adequate to compensate it for the injuries inflicted by the Kresch Defendants. Accordingly, Zimmer is entitled to preliminary and permanent injunctive relief.

> **ANSWER:** Rhetorical paragraph one hundred seventy-three (173) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

174. Zimmer is informed and believes and on that basis alleges that the Kresch Defendants' conduct has been intentional and willful and in conscious disregard of Zimmer's rights.

> **ANSWER:** Rhetorical paragraph one hundred seventy-four (174) of the plaintiffs' Second Amended complaint contain no allegations against this defendant. Accordingly, no answer is necessary.

## AFFIRMATIVE DEFENSES

Defendant, Elk & Elk, by counsel, in further answer to and for their affirmative defenses to Plaintiff's Complaint state as follows:

1.    Zimmer can recover nothing because the statements are true, and truth is an absolute defense.

2.    Any statements by Elk & Elk are protected by the First Amendment, and the Constitutions of the State of Indiana and the State of Ohio.

3.    There are no statements of fact contained in the allegedly defamatory materials. Accordingly, the allegedly defamatory material cannot serve as a basis for liability.

4.    Zimmer is not entitled to any injunctive relief against this defendant.  In fact, the Complaint admits that this defendant has, upon receipt of the so-called "cease and desist" letter, removed Zimmer and NexGen from any of its "advertising" materials, as well as from its website.  In addition, its allegedly offending commercial had already ceased airing.  Accordingly, Zimmer's attempts to continue any injunctive relief is frivolous and violates 28 U.S.C. § 1927.

5.    There is no personal jurisdiction over this defendant.

6.    Count II fails to state a claim upon which relief may be granted.

7.    Count III fails to state a claim upon which relief may be granted against this Defendant.

8.    Count IV fails to state a claim upon which relief may be granted.

9.    Zimmer has wholly failed to demonstrate that it is entitled to recover punitive damages.

10.   Pursuant to the pendent state law claims, Zimmer must prove, by clear and convincing evidence, that it is entitled to punitive damages.

11.   The allegedly defamatory statements are entitled to an absolute or a qualified privilege.

12.   If Plaintiff was injured as alleged in its Second Amended Complaint, said injuries were caused by the failure of the Plaintiff to exercise reasonable care for its own safety and that such failure was the sole and proximate cause of said alleged injuries.

13.    The Plaintiff's conduct in any and all dealings was the proximate cause of any damage the Plaintiff allegedly received.

14.    The Plaintiff's alleged damages, if any, were not proximately caused by any act or omission attributable to this defendant under any theory of liability.

15.    If any co-defendant becomes a non-party to this action as a result of a Motion for Summary Judgement, settlement, or other means, Elk & Elk specifically names the said co-defendant as a non-party responsible in whole or in part for the injuries and damages that are the subject of the Second Amended Complaint; and said non-parties' percentage of fault must be taken into consideration in the allocation of fault for the incident that forms the basis of the Second Amended Complaint.

16.    The Plaintiff failed to mitigate any damages it allegedly received.

17.    This answering defendant reserves the right to further plead defenses of which it becomes aware through discovery or otherwise.

18.    To the extent that this answering defendant has not responded to any of the allegations contained in Plaintiffs' Second Amended Complaint, Defendant specifically denies the same at this time.

19.    Zimmer has not suffered any damages as a result of the allegedly defamatory material.  In fact, if Zimmer has suffered any diminished income in the last few months, then any diminished income is a result of the overall economy and not as a the result of any putative actions of this defendant.

20.    Any pendent state law claims would be governed by Ohio, not Indiana, law.

21.    With respect to paragraphs 83 - 92 of the Second Amended Complaint, upon receipt of the cease and desist letter, Elk & Elk removed the material from its website and had already stopped the ad.

**WHEREFORE**, Defendant Elk & Elk, by counsel, prays that the Plaintiff takes nothing by way of its complaint for damages, for judgment in favor of these Defendants, and for all other just and proper relief in the premises, including the costs of this action.

## JURY DEMAND

Defendant, Elk & Elk, by counsel, requests trial by jury on the issues herein.

HUNT SUEDHOFF KALAMAROS, LLP

By: /s/ Lyle R. Hardman
Lyle R. Hardman (#16056-49)
Attorney for Defendant, Elk & Elk
120 West La Salle Ave. 12th Floor
Post Office Box 4156
South Bend, IN 466341-4156
Telephone: (574) 232-4801

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the above and foregoing Defendant, Elk & Elk's Answers to Plaintiffs' Second Amended Complaint for Damages, Affirmative Defenses, and Jury Demand was served upon the following:

Joseph H. Yeager
April E. Sellers
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204

Angela Kelver Hall
202 South Michigan Street
Suite 1400
South Bend, IN 46601

Abigail M. Butler
Kyle B. Osting
111 East Wayne Street
Suite 800
Fort Wayne, IN 46802

Alyson Oliver
Kresch Oliver PLLC
24100 Southfield Road, Suite 305
Southfield, MI 48075

via electronic mail using ECF/Pacer, this 21 day of June, 2011.

/s/ Lyle R. Hardman
Lyle R. Hardman (#16056-49)

-37-