IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ZIMMER, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:11-cv-0063-RLM-CAN |
| | ) | |
| ARI KRESCH, KRESCH/OLIVER PLLC, | ) | |
| KRESCH LEGAL SERVICES, P.L.C., | ) | |
| THE MOODY LAW FIRM, INC., | ) | |
| ROTTENSTEIN LAW GROUP, LLP, and | ) | |
| ELK & ELK, | ) | |
| | ) | |
| Defendants. | ) | |

## ZIMMER, INC.'S REPLY IN SUPPORT OF MOTION FOR RELIEF AND RESPONSE TO KRESCH DEFENDANTS' MOTION TO SHOW CAUSE

Zimmer, Inc. ("Zimmer") brought this action because the defendants – plaintiffs' lawyers and law firms – have run false and defamatory advertisements about Zimmer products in an effort to attract clients. Zimmer and the Kresch defendants[1] recently entered into a settlement agreement, under which the Kresch defendants agreed to stop running ads similar to the ones that led to this lawsuit. But recently the Kresch defendants have run similar ads, in breach of the agreement. Contrary to the Kresch defendants' protestations, Zimmer never approved the ads that Kresch is running.

The Court should grant Zimmer relief from the Court's order calling for dismissal of the Kresch defendants, and deny the Kresch defendants' motion to show cause.

---

[1] Ari Kresch, Kresch/Oliver PLLC, and Kresch Legal Services, P.L.C.

BDDB01 6744614v1

# I.   Background

## A.  The Lawsuit

As outlined in Zimmer's complaint, the Kresch defendants established and controlled a website and an 800 number for recruiting and referring plaintiffs nationwide in personal injury products cases.   The Ari Kresch page on the Kresch/Oliver PLLC website (www.krescholiver.com) states that Mr. Kresch is an experienced personal injury lawyer who has established the website "www.1800lawfirm.com" as part of his national network of plaintiffs' lawyers.   Callers to the toll free number 1-800-law-firm are directed to a call center near the Kresch/Oliver PLLC office and screened for forwarding to lawyers including the Kresch defendants.   The Kresch defendants also directly and through intermediaries established and have operated a website known as www.zimmernexgenkneereplacement.com. *See* Complaint (Dkt. 12) ¶¶19-20.

The Kresch defendants filed a motion to dismiss Zimmer's claims against them, alleging that they are not subject to personal jurisdiction in Indiana.   That motion also alleged that Mr. Kresch was not personally served with the complaint in this case.   In its response brief, Zimmer submitted an affidavit showing information from its process server that Mr. Kresch was intentionally avoiding personal service.   Zimmer also described the ways in which the Kresch defendants have sought clients across the country, including Indiana. *See* Dkt. 31.

## B.  The Settlement Agreement

In April 2011, Zimmer and the Kresch defendants entered into a settlement agreement to resolve the claims in this Action.   A true and correct copy of that agreement is

attached here as Exhibit A.[2]  Under the settlement agreement, the Kresch defendants agreed to

cease publication of certain types of ads about Zimmer products, including:

(a) All material regarding Zimmer NexGen products published to date on the websites identified in the Complaint in the Action as maintained, owned or operated by Kresch (the "Kresch Website Material"); and

(b) Statements similar to the objectionable material set forth in subsection (a) above, for example:

(1)    "Research shows that 36% of patients who received NexGen® knee replacements experienced joint loosening."

(2)    "Patients who received the NexGen® joints may experience joint failure at a higher rate than other joint types."

(3)    "Physicians presenting at the American Academy of Orthopedic Surgeons ("AAOS") "argued that 36% of patients who received the NexGen® joint experienced pain in their joint."

(4)    "9% of patients who received the NexGen® joint had to undergo a second surgery after experiencing pain associated with the loosening of the joint."

(5)    "In March of 2010 the FDA issued a class 2 recall of the Zimmer Nexgen Knee."

(6)    "March 2010: Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement."

(7)    "Zimmer NexGen Knee Replacement Lawsuit" and "the Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!"

(8)    Solicitations telling patients who have NexGen knee replacements that they may be entitled to cash settlements.

---

[2] The Kresch defendants filed an incorrect version of the settlement agreement, which the Kresch defendants never signed. *See* Dkt. 57-1.

*See* Ex. A p. 1-2. The agreement calls for Zimmer to dismiss its claims against the Kresch defendants without prejudice. By Order dated April 29, 2011 (*see* Dkt. 40), the Court directed the parties to file their dismissal papers by June 17, 2011. Because the Kresch defendants have violated terms of the settlement agreement, Zimmer requested that the Court grant it relief from the order directing dismissal. *See* Dkt. 54.

### C. Kreschs' Post-Settlement Advertisements

Since the time that the settlement agreement was signed, the Kresch defendants have run a television advertisement in Indiana and presumably elsewhere[3] that shows a picture of a Zimmer knee and claims "thousands of knee implants have been recalled already. If you or a loved one had a knee replacement, you may be entitled to a cash settlement." A true and correct print-out of a screen shot from that ad, along with a transcript of the audio from it, is attached hereto as Exhibit B. In addition, as of the date of this filing, the Kresch defendants' website contains a heading called "Defective Products," under which appears a sub-heading of "defective products" listing NexGen. *See* Exhibit C. So far as Zimmer has been able to ascertain, Zimmer NexGen is the only knee product advertised on the Kresch defendants' website. Also on the website is a posting dated April 19, 2011 (but which did not appear, so far as Zimmer could ascertain, on that date) titled "Zimmer Passes Blame for Device's High Failure Rates to Surgeons, Patients," which states:

> A study presented to the American Association of Orthopedic Surgeons indicated that after just two years of use, the Zimmer NexGen CR-Flex replacement knee was experiencing high failure rates of 9.3 percent. Also, 36 percent of the patients studied reported pain and loosening of the defective implant in that two-year time frame. The defective Zimmer device was intended to

---

[3] The Kresch defendants therefore cannot claim they are not subject to jurisdiction in this Court. Moreover, Zimmer – without conducting discovery – cannot know when the ad began running, or in what jurisdictions it has run. But it was not mentioned in Zimmer's complaint in this action because Zimmer was not aware of it. Mr. Kresch has told Zimmer that "this is the only tv spot that we've ever run since our agreement." *See* Exhibit E.

> last 15 years .... Over 150,000 Zimmer NexGen knee implants
> have been sold since 2003; many patients have undergone painful
> revision surgery to remove the defective device and be implanted
> with another device.

*See* Exhibit D.

Individually and collectively, these advertisements violate the settlement agreement and constitute fresh slanders against Zimmer.

## II.   <u>Argument</u>

### A.  The Kresch Defendants' Advertisements Violate the Settlement Agreement

The Kresch defendants' television and website advertisements contain precisely the type of defamatory material that the Kresch defendants agreed to cease.

First, the television advertisement states that "If you or a loved one had a knee replacement they may be entitled to cash settlements," and shows a picture of a NexGen knee. This is remarkably similar to one of the settlement agreement's examples of a prohibited statement (See Ex. A at 1(b)(8), "Solicitations telling patients who have NexGen knee replacements that they may be entitled to cash settlements.")

Second, the website lists the NexGen product under the heading "Defective Products" (see Ex. C), which is similar to the prior advertisement headline that read, "The Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!"  (See Complaint Ex. B.).

Third, the Kresch defendants' website posts an article saying that "A study presented to the American Association of Orthopedic Surgeons indicated that after just two years of use, the Zimmer NexGen CR-Flex replacement knee was experiencing high failure rates of 9.3 percent.  Also, 36 percent of the patients studied reported pain and loosening of the defective

5

implant in that two-year time frame." *See* Ex. D.  That is nearly identical to another of the settlement agreement's example of prohibited language, 1(b)(3) and (4) ("Physicians presenting at the American Academy of Orthopedic Surgeons ("AAOS") "argued that 36% of patients who received the NexGen® joint experienced pain in their joint …9% of patients who received the NexGen® joint had to undergo a second surgery after experiencing pain associated with the loosening of the joint.")

As a result, Zimmer now has post-settlement claims against the Kresch defendants for breach of the settlement agreement and for post-settlement defamation, tortious interference, and related claims.  The Court should therefore grant Zimmer's motion for relief from the order requiring dismissal of the Kresch defendants.

## B.  The Court Should Deny The Kresch Defendants' Motion to Show Cause

The Kresch defendants request the Court to order their dismissal from the case, and claim that the Court should impose sanctions against Zimmer. The Kresch defendants' motion is based on several faulty arguments.

### 1.  Rule 8 does not apply to Zimmer's motion.

The Kresch defendants wrongly claim that Zimmer's motion does not comply with Fed. Rule Civ. Pro. 8(a)(2), which requires that pleadings contain a short and plain statement of the claim.  But Zimmer's motion is not a pleading, and Rule 8 does not apply to it.

### 2.  Zimmer told the Kresch defendants the basis for its objections.

Contrary to the Kresch defendants' arguments, there is no federal rule that required Zimmer to discuss ahead of time the basis for its motion.  But Zimmer's counsel did respond to the Kresch defendants' accusations, and emailed that response *before* the Kresch

6

defendants filed their motion seeking sanctions.  *See* attached Exhibit F, sent at 2:30 p.m., approximately 20 minutes before Kreschs' filing at 2:56 p.m. (*See* Dkt. 56)  The Kresch defendants misspeak by claiming that Zimmer "has failed and refused to respond" (*see* Dkt. 56 p. 4) – a misstatement they repeated the next day in their Motion to Show Cause (*see* Dkt. 57 p. 5).

### 3.  Zimmer never approved the Kresch defendants' advertisements.

The Kresch defendants wrongly allege that Zimmer's counsel "actively reviewed content of Defendant's advertising to ensure compliance" before executing the settlement agreement.  *See* Dkt. 56 p. 3; Dkt. 57 p. 1.  In reality:

- The Kresch defendants (at least to Zimmer's knowledge) were not yet running the television ad at the time of the settlement agreement.

- The settlement agreement requires the Kresch defendants to cease running advertising that was similar to their earlier ads.  Zimmer never stamped its approval of ads that the Kresch defendants have run since settlement.  Zimmer's objections to earlier pre-settlement ads provides no evidence of "approval" of later ads.

- Contrary to Kreschs' claims, the emails that they have filed (*see* Dkt. 57-2) do not say that Zimmer approves of any of Kreschs' advertisements.

- Instead, the Kresch defendants seem to argue that so long as they avoided the precise quotes set forth in the settlement agreement as examples, they have not breached the agreement.  The Kresch defendants had hoped to settle on such terms – they sent the agreement marked with their changes, proposing that the Kresch defendants cease publishing the prior materials and statements similar to them "more particularly described as follows..." *See* attached Ex. G (email from Ms. Oliver with redlined version attached).  But Zimmer did not agree to that, and the settlement agreement instead prohibits the prior materials or "Statements similar to the objectionable material set forth in subsection (a) above, for example...."

The Kresch defendants have made no attempt to explain why their advertisements are not prohibited by the settlement agreement.  They are of course free to deny Zimmer's allegations, by way of answering a supplemental pleading when and if the Court grants Zimmer

leave to file one.  But they have no grounds for arguing that Zimmer should not even be permitted to bring its claims based on post-settlement advertisements.

### III.  Conclusion

The Court should grant Zimmer's motion for relief and deny the Kresch defendants' motion to show cause.  Because Zimmer has claims based on the Kresch defendants' advertisements since the time of settlement, Zimmer respectfully requests that it permit Zimmer to bring those new claims in an Amended and Supplemental Complaint, pursuant to a separate motion to be filed.

Respectfully submitted,

BAKER & DANIELS LLP

By:/s/*Joseph H. Yeager, Jr.*
Joseph H. Yeager, Jr. (#2083-49)
April Edwards Sellers (#21081-49
300 N. Meridian Street Suite 2700
Indianapolis, IN 46204-1782
Telephone:  317-237-0300
Facsimile:  317-237-1000
*jay.yeager@bakerd.com*
*april.sellers@bakerd.com*

Angela Kelver Hall (#26991-71)
202 South Michigan Street, Suite 1400
South Bend, IN 46601
Telephone:  574-234-4149
Facsimile:  574-239-1900
*angela.hall@bakerd.com*

Abigail M. Butler (#22295-02)
Kyle B. Osting (#26532-02)
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802
Telephone:  260-424-8000
Facsimile:  260-460-1700
*abigail.butler@bakerd.com*
*kyle.osting@bakerd.com*

*Counsel for Zimmer, Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on July 1, 2011. Notice of filing shall be sent to all parties via operation of the Court's electronic filing system or by first class United States mail, postage pre-paid on the following:

Alyson Oliver
Kresch Oliver PLLC
Ari Kresch
Kresch Legal Services, L.L.C.
24100 Southfield Road Suite 305
Southfield, MI 48075
notifications@krescholiver.com

Lyle R. Hardman
Hunt Suedhoff Kalamaros LLP
120 W. LaSalle Avenue, 12th Floor
PO Box 4156
South Bend, IN 46634-4156

Jay P. Kennedy
Kroger, Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204-5125

Tracy D. Knox
Alice J. Springer
Barnes & Thornburg LLP
600 1st Source Bank Center
100 North Michigan Street
South Bend, Indiana 46601-1632

*/s/Joseph H. Yeager, Jr.*

# EXHIBIT A

## SETTLEMENT AGREEMENT

Ari Kresch, Kresch/Oliver, PLLC, and Kresch Legal Services, P.L.C. (collectively, "Kresch") and Zimmer, Inc. ("Zimmer") enter into this settlement agreement ("Agreement") to reflect the terms to which Zimmer and Kresch have agreed in resolving certain controversies between them.

### Recitals

A.      On February 16, 2011 Zimmer commenced an action against Kresch and others in the United States District Court for the Northern District of Indiana (the "Court") under Case No. 3:11-CV-63-WCL (the "Action").

B.      Kresch and Zimmer have engaged in good faith settlement conversations regarding possible resolution of Zimmer's claims.

C.      Zimmer and Kresch have agreed to resolve Zimmer's claims against Kresch set forth in the Action on the terms set forth below.

### Agreement

1.      Kresch and all entities acting in concert with it will permanently cease and desist publication, by television, letter, website, email, United States mail or any other means, of:

(a)      All material regarding Zimmer NexGen products published to date on the websites identified in the Complaint in the Action as maintained, owned or operated by Kresch (the "Kresch Website Material"); and

(b)      Statements similar to the objectionable material set forth in subsection (a) above, for example:

(1)      "Research shows that 36% of patients who received NexGen® knee replacements experienced joint loosening."

(2)    "Patients who received the NexGen® joints may experience joint failure at a higher rate than other joint types."

(3)    "Physicians presenting at the American Academy of Orthopedic Surgeons ("AAOS") "argued that 36% of patients who received the NexGen® joint experienced pain in their joint."

(4)    "9% of patients who received the NexGen® joint had to undergo a second surgery after experiencing pain associated with the loosening of the joint."

(5)    "In March of 2010 the FDA issued a class 2 recall of the Zimmer Nexgen Knee."

(6)    "March 2010: Data was presented by a group of knee surgeons that indicated almost 9% of patients examined after 2 years required revision surgery and 36% showed signs of a loose knee replacement."

(7)    "Zimmer NexGen Knee Replacement Lawsuit" and "the Zimmer NexGen knee replacement has been linked to pain, failure and revision surgery!"

(8)    Solicitations telling patients who have NexGen knee replacements that they may be entitled to cash settlements.

(c)    Provided, however, this Agreement does not prohibit future advertising regarding products, if any, subject to a future Class 1 recall based on manufacturing or design defects and directly affecting the safety of the product in question.

2.    Kresch will publish on www.1800lawfirm.com, for a period of six months commencing with the execution of this Agreement, in the location previously occupied by the Kresch Website Material, a correction saying:

> **We have determined that the sources we previously relied upon to make claims about the Zimmer NexGen Knee System do not support the statements or implications that significant**

2

**numbers of patients receiving the NexGen Knee System as a whole experienced pain or loosening or require additional surgery or that the NexGen Knee System as a whole is otherwise defective.**

(the "Correction Language"). The Correction Language must be clearly visible and easily legible, in a typeface at least as large as the primary text now on those pages. Zimmer may quote and/or link to the Correction Language.

3.     The Correction Language shall run as the statement of Kresch or as a statement Kresch agreed to make in connection with the resolution of the Action. There will be no surrounding or other material suggesting in any way that the Correction Language was coerced, involuntary, or is otherwise inaccurate.

4.     Kresch hereby transfers the domain name www.zimmernexgenkneereplacement.com to Zimmer, and agrees to execute any documents necessary to perfect that transfer.

5.     Zimmer and Kresch agree that the damages that would result from Kresch's breach of this Agreement would be difficult or impossible to ascertain. Accordingly, to the extent that Kresch or Zimmer may breach the provisions of paragraphs 1, 2 and/or 3 of this Agreement, Kresch or Zimmer may recover liquidated damages from the other in the amount of $50,000 plus reasonable attorneys fees for each instance in which such provisions are breached. Zimmer and Kresch agree that this liquidated damage provision is reasonable, is not intended to be a penalty, and is intended to compensate the non-offending party for the damages that it would incur as the result of a breach. Zimmer and Kresch further agree that the amount of the liquidated damages set forth in this paragraph is not greatly disproportionate to the loss that the non-offending party likely would sustain as a result of a breach of the provisions of paragraphs 1, 2 and/or 3 of this Agreement. PROVIDED, HOWEVER, that this liquidated damages provision

3

applies only to a claim for Breach of Contract under paragraphs 1, 2 and/or 3 of this Agreement, and that nothing in the foregoing or otherwise set forth in this Agreement shall in any way waive or otherwise limit the non-offending party's right to seek and recover actual, presumed, punitive and statutory damages, and other relief available at law, by statute or at equity, resulting from future conduct by the offending party.

6.    Zimmer, for itself and its successors-in-interest, subsidiaries, affiliates and related entities hereby releases and forever discharges Kresch and its members, partners, managers, employees and attorneys from any and all claims, demands, and causes of action that Zimmer set forth in the Action against Kresch; PROVIDED, HOWEVER, that this release and discharge shall in no way be construed to extend directly or indirectly to any future conduct by Kresch, or to the obligations of Kresch set forth in this Agreement which shall survive the execution of this Agreement and shall in no way be affected by this release and discharge; and PROVIDED FURTHER, that this Agreement is intended by the parties to extend only to Kresch, and does not extend in any manner to other defendants in the Action or to any other entity.

7.    Kresch, for itself and its successors-in-interest, subsidiaries, affiliates, partners, managers, members, employees and attorneys hereby releases and forever discharges Zimmer and its subsidiaries, affiliates, related entities, agents, employees and attorneys from any and all claims, demands and causes of action that Kresch may have related to the Action; PROVIDED, HOWEVER, that this release and discharge shall in no way be construed to extend directly or indirectly to any future conduct by Zimmer or to the obligations of Zimmer set forth in this Agreement, which shall survive the execution of this Agreement and shall in no way be affected by this release and discharge, and PROVIDED that this release shall in no way be construed to extend to any product liability action on behalf of any client that Kresch may have

4

filed, now have in inventory, or may file in the future against Zimmer regarding any product produced by Zimmer.

8.     This Agreement may be executed in counterparts, each of which shall be considered a complete original once all parties have executed and exchanged a copy of the Agreement.

9.     This release is reached for the sole purposes of resolving a disputed matter; liability on behalf of all signing parties has been and is hereby specifically and categorically denied.

10.     This Agreement contains the entire agreement between Zimmer and Kresch regarding settlement of Zimmer's claims against Kresch in the Action. All prior or contemporaneous oral or written understandings of Zimmer and Kresch are superseded by the express contents of this Agreement. In particular and without limiting the generality of the foregoing, the parties have agreed upon no restriction regarding disclosure of the terms of this Agreement.

11.     This Agreement may be modified only by a written instrument executed by Zimmer and Kresch. On full execution of this Agreement by both parties, and upon Zimmer's verification of Kresch's compliance with paragraphs 1 through 3 of this Agreement ten (10) business days from the start of Kresch's compliance with his obligations under the Agreement, Zimmer will dismiss Kresch from the Action, without prejudice.

12.     This Agreement shall be construed and interpreted in accordance with the laws of the State of Indiana exclusive of its choice of law rules. If any action or claim for the alleged breach of this Agreement is brought, the prevailing party shall be entitled to an award of his, her or its costs and attorneys' fees.

5

ZIMMER, INC.

Date: April 26, 2011

By _____
Printed  Chad F. Phipps
Its  Senior Vice President,
     General Counsel & Secretary

6

ARI KRESCH

Date: 4/26/11

By _____
Printed  Ari Kresch


KRESCH/OLIVER, PLLC

Date: 4/26/11

By _____
Printed  Ari Kresa


KRESCH LEGAL SERVICES, P.L.C.

Date: 4/26/11

By _____
Printed  Ari Kresa

7

**EXHIBIT B**

# CALL
# NOW!





**PLEASE VISIT OUR WEBSITE FOR
IMPORTANT DISCLOSURES. NOT AVAILABLE
IN ALL AREAS**

WWW.1 800 LAW FIRM.COM

 1 800 LAW FIRM.com
*Americas most trusted legal network*

**Kresch Television Ad**

Attention Knee Replacement Patients:

Thousands of knee implants have been recalled already.  If you or a loved one had a knee replacement, you may be entitled to a cash settlement.

Call 1-800-Law-Firm now.

# EXHIBIT C







Defective Products | 1-800-LAW-FIRM - Windows Internet Explorer provided by Baker & Daniels LLP

1800 LAW FIRM.com
*America's most trusted legal network*

Click Here For: LIVE HELP DESK Answers To Questions

HOME PRACTICE AREAS ABOUT US LAW FIRM TV BLOG

Accidents & Injuries Bankruptcy Class Action Dangerous Drugs Defective Products Employment Medical Social Security Veterans Whistleblower Other

Home › Practice Areas

Connect With 1-800-LAW-FIRM

Join the 1-800-Law-Firm Mailing List

Contact 1-800-LAW-FIRM

First Name: *

Last Name: *

Email Address: *

Inquiring on behalf of: *

Zipcode: *

Home Phone: *

Cell Phone:

Please Describe your Legal Concern:

# Defective Products

## Defective Products Featured Video

### Defective products

Posted: Wed, 12/15/2010

Whether you are the victim of a defective product or a breach of warranty, 1-800-LAW-FIRM has a network attorney that is an expert in each area. If you are interested in learning more, please click the links to learn about ongoing product liability claims pursued by our experienced attorneys. Call 1-800-LAW-FIRM now!

Connect with 1-800-LAW-FIRM — Click Here To Connect Our Live Help Center

Defective Products | 1-800-LAW-FIRM - Windows Internet Explorer provided by Baker & Daniels LLP

Concern:

I agree to the Terms of Use and Privacy Policy.*

Speak With an Attorney

## Defective Products

Manufacturers, wholesalers, distributors, and vendors are liable for damages caused by dangerous or defective products. Products containing inherent defects that cause harm to a consumer of the product, or someone to whom the product was loaned, given, etc., are the subjects of products liability suits. It is possible for a product liability action to arise from a defect in real estate, such as a poorly installed vapor barrier that causes mold to grow inside a wall, or from personal products, such as denture adhesive that causes zinc poisoning. Other products include:

- Construction materials: drywall, pipe insulation, flooring, lumber, paint
- Consumer products: children's toys, electronics, apparel, vehicles, watercraft etc.
- Cosmetics and hygiene products: make-up, soap, shampoo, toothpaste, denture adhesive
- Foods: packaged, canned, meat, poultry, vegetables, etc.
- Utilities: natural gas, oil, water
- Naturals: pets, plants
- Real estate: house, property
- Writings: maps, navigational charts

Product liability frequently involves retail items, but extends to anything that can be sold. There are four types of product claims that incur liability in manufacturers and suppliers:

- Design defects are inherent and exist before the product is manufactured. While the item might serve its purpose well, it can be unreasonably dangerous to use due to a design flaw.
- Defective manufacture claims allege that a defect resulted from the process of construction or production which created the product. Only a few out of many products of the same type are flawed in this case.

STAY INFORMED! CLICK HERE TO GET THE LATEST MEDICAL & MALPRACTICE NEWS AND INFORMATION

Related News Entries

- Co-op fined over shop asbestos
- The Older Home: Asbestos – Should you lose it or leave it alone?
- Another public health crisis is inevitable
- Research: Tanning bed exposure can lead to serious skin problems
- Court makes it easier to sue businesses

Related Blog Entries

- Arthro prosthetic Cobaltism
- NuvaRing is Dangerous!
- Would You Like Some Zinc with Your Meal?

Connect with 1-800-LAW-FIRM — Click Here To Connect Our Live Help Center

- Naturals: pets, plants
- Real estate: house, property
- Writings: maps, navigational charts

Product liability frequently involves retail items, but extends to anything that can be sold. There are four types of product claims that incur liability in manufacturers and suppliers.

- Design defects are inherent and exist before the product is manufactured. While the item might serve its purpose well, it can be unreasonably dangerous to use due to a design flaw.

- Defective manufacture claims allege that a defect resulted from the process of construction or production which created the product. Only a few out of many products of the same type are flawed in this case.

- Defects in marketing deal with improper instructions and failures to warn consumers of latent dangers in the product. A claim of a marketing defect involves such issues as insufficient instructional material or warning labels or instructions.

- Additionally, a breach of warranty claim alleges a contract between a manufacturer or vendor and its customer that the product will be fit for its intended purpose.

Whether you are the victim of a defective product or a breach of warranty, 1-800-LAW-FIRM has a network attorney that is an expert in each area. If you are interested in learning more, please click the links to learn about ongoing product liability claims pursued by our experienced attorneys.

### Defective Products

**Consumer Products**
- Asbestos
- Breast Implants & T Cell Lymphoma
- Dental Adhesive

**Medical Products**
- DePuy ASR Hip Replacement
- Gadolinium-Based Contrast Agents (GBCAs)
- NexGen CR-Flex Knee
- NuvaRing
- Transvaginal Mesh
- Zimmer Durom Cup Hip Replacement

# EXHIBIT D

# Zimmer Passes Blame for Device's High Failure Rates to Surgeons, Patients

**4/19/2011 -**

A study presented to the American Association of Orthopedic Surgeons indicated that after just two years of use, the Zimmer NexGen CR-Flex replacement knee was experiencing high failure rates of 9.3 percent. Also, 36 percent of the patients studied reported pain and loosening of the defective implant in that two-year time frame. The defective Zimmer device was intended to last 15 years.

Dr. Richard Berger, a Zimmer consultant at the time and the lead author of a study concerning the Zimmer product defects, called the failure rate of the Zimmer knee system "horrific." When Dr. Berger attempted to discuss the matter with Zimmer, he was advised that the unprecedented failure rate was due to physician technique and error, and patient type. Meanwhile, a number of peer reviewed studies indicate that loosening knee implants were not related to specific surgeons, approaches, or patient type.

The Zimmer NexGen CR-Flex knee device is a synthetic device used to cap the thigh bone at the knee without the traditional use of cement due to its porous fiber metal and a cobalt-chromium-molybdenum alloy construction. Over 150,000 Zimmer NexGen knee implants have been sold since 2003; many patients have undergone painful revision surgery to remove the defective device and be implanted with another device.

Meanwhile, study after study has questioned Zimmer's promises of improved range of motion. For instance, a study published in the Journal of Bone and Joint Surgery, 2005, "found no significant differences between the groups with regard to range of motion"; in 2007, another study found that 31 percent of the patients studied needed a revision in less than 23 months of original implantation.

A 2010 study, published in The Journal of Bone and Joint Surgery, led by Dr. Berger and co-authored by Dr. Craig Della Valle found, "[t]his component is still commercially available but should not be used for any patient." The team added that it found, "No functional advantage to the patient. Misleading sales claims and increases chances for revision."

In addition to a growing number of studies pointing to problems with the Zimmer device, a number of Zimmer products have been recalled including some other components used with the Zimmer NexGen Complete Knee Solution MIS procedure, such as the NexGen TM Tibial Trays, NexGen MIS Tibial Components, and MIS Modular Tibial Plates and Keels. And, although the Zimmer NexGen MIS tibial component recall involved over 68,000 components, Zimmer never issued a public statement regarding the September 2010 action. Finally, in March 2011, the Zimmer NexGen MIS tibial component recall was added to the U.S. Food & Drug Administration's (FDA) website.

Problems with the recalled components appeared to be preventing them from fusing to bone. The FDA said it has received 114 reports of complications associated with the recalled Zimmer NexGen MIS tibial components, such as loosening of the device; every patient required revision surgery.

In addition to poor reviews, increasing reports of device failure, and recalls, legal action continues to mount against the device maker. Most recently, we reported that another lawsuit was filed against Zimmer Holdings Inc. and its subsidiaries, claiming that the Zimmer NexGen CR-Flex Porous Femoral knee replacement system is defective. The plaintiff in that case, a resident of Illinois, claims his Zimmer NexGen knee failed less than three years after it was implanted.

**EXHIBIT E**

**Yeager, Joseph H.**

| | |
|---|---|
| **From:** | Ari Kresch [akresch@1800lawfirm.com] |
| **Sent:** | Wednesday, June 08, 2011 3:06 PM |
| **To:** | Yeager, Joseph H. |
| **Cc:** | Alyson Oliver |
| **Subject:** | lawfirm knee commercial |
| **Attachments:** | video.mov |

Hi Jay,

This is the only tv spot that we've ever run since our agreement.  Let me know if the air is cleared.

Ari

**EXHIBIT F**

| | |
|---|---|
| **From:** | Davis, Jan S. |
| **To:** | "akresch@1800lawfirm.com"; "aoliver@krescholiver.com" |
| **Bcc:** | Yeager, Joseph H. |
| **Subject:** | Please see attached from Jay Yeager |
| **Date:** | Tuesday, June 21, 2011 2:30:23 PM |
| **Attachments:** | 2011-06-21 - Letter from J. Yeager to A. Kresch and A. Oliver responding to A. Oliver s 6 19 11 emai.PDF |

Attached is a copy of Jay Yeager's June 21, 2011 letter regarding the above-referenced matter. A hard copy is being sent by first-class mail.

If you have any questions or comments about the attached, please direct them to Jay Yeager at 317-237-1278, or jay.yeager@bakerd.com . Thank you.

**Jan Davis** |Legal Secretary | T: 317.237.1302 | F: 317.237.1000

**Baker & Daniels LLP** | www.bakerdaniels.com | 300 N. Meridian Street, Suite 2700 | Indianapolis, IN  46204

# BAKER&DANIELS
EST. 1863

 COPY

JOSEPH H. YEAGER, JR.
Partner
Direct 317.237.1278
jay.yeager@bakerd.com

BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Tel 317.237.0300  Fax 317.237.1000
www.bakerdaniels.com

June 21, 2011

<u>By email and first-class mail</u>

Ari Kresch
Alyson Oliver
Kresch/Oliver PLLC
24100 Southfield Road, Suite 305
Southfield, MI 48075

Dear Ari and Alyson:

I am writing in response to Alyson's email, which I received on Sunday morning. The selective memory in this disagreement is not mine. Let us set the facts straight.

**First:** Your current advertising violates the Settlement Agreement and defames Zimmer because it is similar to the pre-suit ad, making directly and by implication the false and misleading statement that certain Zimmer products are defective. Though your failure to name Zimmer in your TV spot is clever, the ad is nonetheless plainly aimed at Zimmer. It contains an image of an actual Zimmer product. Anyone who sees the ad and googles "knee replacement lawsuit" or the like will see Zimmer. In addition, anyone who sees the ad and calls 1-800-law firm will doubtless be asked about Zimmer products. Indeed, *Zimmer is the only knee product on your website.* There is just no way you can colorably claim your advertising is directed at some other manufacturer.

**Second:** Neither I nor Zimmer ever "approved" your statements that Zimmer products are defective. During our call Friday I asked you several times when and where I supposedly approved these statements. The emails you forward below supply no such approval. Those emails predated the execution of the settlement agreement, and led to changes in the draft to provide, expressly, some examples of some kinds of "similar" website material that would be barred by the agreement. Ari will confirm that he asked that the contractual prohibition be limited to those specific words, but that Zimmer refused to settle on such terms. The final signed agreement applies the standard of "similarity." Ari wanted approval of specific language but he did not get it, and the agreement could not be clearer on this.

Ari Kresch                              2                          June 21, 2011
Alyson Oliver


        I did not directly or impliedly approve statements that Zimmer products were
defective.  If there is some other writing or even conversation that you claim contradicts the
written agreement, you need to tell me specifically when and where it supposedly occurred and
exactly what you claim transpired.

                                    Very truly yours,
                                    Original signed
                                        by
                                    Joseph H. Yeager, Jr.

                                    Joseph H. Yeager, Jr.


JHY/jd
bcc:    Byron Hayes
        Steve Bennett
        April Sellers

BDDB01 6737215v1

# EXHIBIT G

**Sellers, April E.**

| | |
|---|---|
| **From:** | Alyson Oliver [aoliver@krescholiver.com] |
| **Sent:** | Wednesday, April 13, 2011 10:01 AM |
| **To:** | Yeager, Joseph H. |
| **Cc:** | Ari Kresch |
| **Subject:** | RE: Language |
| **Attachments:** | Track changes settlement agreement-110413.docx |

Hi Jay:

Here is the track changes for the settlement.  Please consider that should the underlying case proceed further, we will be unable to agree to the terms set forth here.  I want the language in place by the end of the week if we are to proceed with settlement.  Please review and advise.  Thanks.


Sincerely,

Alyson Oliver, Esq.

KRESCH OLIVER PLLC
24100 Southfield Road Ste. 305
Southfield, MI 48075
(248) 327-6556
Fax:  (248) 436-3385
aoliver@krescholiver.com


NOTICE: This E-mail (including attachments) is confidential, covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, please note that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received the message in error, then delete it and any and all copies. Thank you.


---

**From:** Yeager, Joseph H. [mailto:jay.yeager@bakerd.com]
**Sent:** Tuesday, March 08, 2011 4:55 PM
**To:** Alyson Oliver
**Subject:** RE: Language

We can't dismiss with prejudice but can probably do something with a release of claims arising out of the particular websites we are litigating over – that will protect you and I think it is a substantial concession.  Zimmer won't agree to a confidentiality provision.

I don't have a Zimmer response on the liquidated damages going both ways. I will circle back and let you know. However, it really would not make sense because liquidated damages protect against harm that is difficult to quantify, like breach of an agreement not to make certain statements.  Under this agreement Zimmer is not the one making such a commitment.

1

**From:** Alyson Oliver [mailto:aoliver@krescholiver.com]
**Sent:** Tuesday, March 08, 2011 4:38 PM
**To:** Yeager, Joseph H.
**Subject:** RE: Language

Hi Jay:

What is the response on the other issues we raised in our initial email?


Sincerely,

Alyson Oliver, Esq.

KRESCH OLIVER PLLC
1-800-LAW-FIRM
24100 Southfield Road Ste. 305
Southfield, MI 48075
(248) 327-6556
Fax: (248) 436-3385
aoliver@krescholiver.com

NOTICE: This E-mail (including attachments) is confidential, covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, please note that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received the message in error, then delete it and any and all copies. Thank you.


**From:** Yeager, Joseph H. [mailto:jay.yeager@bakerd.com]
**Sent:** Tuesday, March 08, 2011 2:49 PM
**To:** Alyson Oliver
**Subject:** Language

Alyson, here's the corrective language.


> **We have determined that the sources we previously relied upon to make claims about the Zimmer NexGen Knee System do not in fact support the statements or implications that significant numbers of patients receiving the NexGen Knee System experience pain or loosening or require additional surgery, or that the NexGen Knee System is otherwise defective.**


Sent from my iPad
ATTENTION:

To ensure compliance with applicable Internal Revenue Service Regulations, we inform you that any tax advice contained in this electronic message was not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

<u>**SETTLEMENT AGREEMENT**</u>

Ari Kresch, Kresch/Oliver, PLLC, and Kresch Legal Services, P.L.C.

(collectively, "Kresch") and Zimmer, Inc. ("Zimmer") enter into this settlement agreement

("Agreement") to reflect the terms to which Zimmer and Kresch have agreed in resolving certain

controversies between them.

<u>**Recitals**</u>

A.      On February 16, 2011 Zimmer commenced an action against Kresch and

others in the United States District Court for the Northern District of Indiana (the "Court") under

Case No. 3:11-CV-63-WCL (the "Action").

B.      Kresch and Zimmer have engaged in good faith settlement conversations

regarding possible resolution of Zimmer's claims.

C.      Zimmer and Kresch have agreed to resolve Zimmer's claims against

Kresch set forth in the Action on the terms set forth below.

<u>**Agreement**</u>

1.      Kresch and all entities acting in concert with it will permanently cease and

desist publication, by television, letter, website, email, United States mail or any other means, of:

DRAFT
4/8/2011

    (a)    All material regarding Zimmer NexGen products published to date on the websites identified in the Complaint as maintained, owned or operated by Kresch (the "Kresch Website Material"); and

    (b)    Statements similar to the objectionable material from the set forth in subsection (a) above more particularly described as follows:

    (1)"Research shows that 36% of patients who received NexGen® knee replacements experienced joint loosening."

    (2) "Patients who received the NexGen® joints may experience joint failure at a higher rate than other joint types."

    (3)"Physicians presenting at the American Academy of Orthopedic Surgeons ("AAOS") "argued that 36% of patients who received the NexGen® joint experienced pain in their joint."

    (4) "9% of patients who received the NexGen® joint had to undergo a second surgery after experiencing pain associated with the loosening of the joint."

    (5) "In March of 2010 the FDA issued a class 2 recall of the Zimmer Nexgen Knee."

**Formatted:** B&D Heading 3

**Formatted:** Indent: Left: 1", First line: 0.5", No bullets or numbering

**Formatted:** Indent: Left: 1.5", No bullets or numbering

**Formatted:** B&D Heading 3, Indent: Left: 1.5"

2

**DRAFT**
**4/8/2011**

2.    Kresch will publish on its website 1-800-lawfirm.com for a period of six

months commencing with the execution of this agreement, in the location

previously occupied by the Kresch Website Material, (is it possible to have it in

the same location and have it not be visible)a correction saying

**We have determined that the sources we previously relied
upon to make claims about the Zimmer NexGen Knee System
do not support the statements or implications that significant
numbers of patients receiving the NexGen Knee System as a
whole experienced pain or loosening or require additional
surgery or that the NexGen Knee System as a whole is
otherwise defective**

(the "Correction Language").  Zimmer may quote and/or link to the Correction

Language.  Zimmer may not utilize direct communication regarding this

Language or this Release to any Kresch client or to any medical professional to be

directed specifically to a Kresch client.

3.    The Correction Language shall run as the statement of Kresch or as a

statement Kresch agreed to make in connection with the resolution of the Action.

There will be no surrounding or other material suggesting in any way that the

Correction Language was coerced, involuntary, or is otherwise inaccurate.

3

| Formatted: B&D Heading 3, Indent: Left: 1" |
| Formatted: Indent: Left: 1" |

**DRAFT**
**4/8/2011**

4.      Zimmer and Kresch agree that the damages that would result from
Kresch's breach of this Agreement would be difficult or impossible to
ascertain.  Accordingly, to the extent that Kresch or Zimmer may breach
the provisions of paragraphs 1, 2 and/or 3 of this Agreement, Kresch or
Zimmer may recover liquidated damages from ~~Kresch~~ the other in the
amount of $50,000 plus reasonable attorneys fees for each instance in
which such provisions are breached.  Zimmer and Kresch agree that this
liquidated damage provision is reasonable, is not intended to be a penalty,
and is intended to compensate ~~Zimmer~~ the non-offending party for the
damages that it would incur as the result of a breach.  Zimmer and Kresch
further agree that the amount of the liquidated damages set forth in this
paragraph is not greatly disproportionate to the loss that ~~Zimmer~~ the non-
offending party likely would sustain as a result of a breach of the
provisions of paragraphs 1, 2 and/or 3 of this Agreement.  PROVIDED,
HOWEVER, that this liquidated damages provision applies only to a non-
offending ~~Zimmer~~ claim for Breach of Contract under paragraphs 1, 2
and/or 3 of this Agreement, and that nothing in the foregoing or otherwise
set forth in this Agreement shall in any way waive or otherwise limit
~~Zimmer~~the non-offending party's right to seek and recover actual,
presumed, punitive and statutory damages, and other relief available at
law, by statute or at equity, resulting from ~~statements if any made or~~

Formatted: B&D Heading 3, Indent: Left:  1.5"

4

BDDB01 6622988v1

**DRAFT**
**4/8/2011**

~~published in the future by Kresch~~future offensive conduct by the offending

party.

5.     Zimmer, for itself and its successors-in-interest, subsidiaries, affiliates and

related entities hereby releases and forever discharges Kresch and its members,

partners, managers, employees and attorneys from any and all claims, demands,

and causes of action that Zimmer set forth in the Action against Kresch;

PROVIDED, HOWEVER, that this release and discharge shall in no way be

construed to extend directly or indirectly to any future conduct by Kresch, or to

the obligations of Kresch set forth in this Agreement which shall survive the

execution of this Agreement and shall in no way be affected by this release and

discharge; and PROVIDED FURTHER, that this Agreement is intended by the

parties to extend only to Kresch, and does not extend in any manner to other

defendants in the Action or to any other entity.

**Formatted:** B&D Heading 3, Indent: Left: 1"

5

DRAFT
4/8/2011

6.      Kresch, for itself and its successors-in-interest, subsidiaries, affiliates,

partners, managers, members, employees and attorneys hereby releases and

forever discharges Zimmer and its subsidiaries, affiliates, related entities, agents,

employees and attorneys from any and all claims, demands and causes of action

that Kresch may have related to the Action; PROVIDED, HOWEVER, that this

release and discharge shall in no way be construed to extend directly or indirectly

to any future conduct by Zimmer or to the obligations of Zimmer set forth in this

Agreement, which shall survive the execution of this Agreement and shall in no

way be affected by this release and discharge, and PROVIDED that this release

shall in no way be construed to extend to any product liability action on behalf of

any client that Kresch may have filed, now have in inventory, or may file in the

future against Zimmer regarding any product produced by Zimmer.-

This Agreement may be executed in counterparts, each of which shall be considered

a complete original once all parties have executed and exchanged a copy of the

Agreement.

7.  This release is reached for the sole purposes of resolving a disputed matter;  liability

on behalf of all signing parties has been and is hereby specifically and categorically

denied.

> **Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.63" + Indent at:  0.88", Keep with next, Keep lines together

> **Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.63" + Indent at:  0.88", Keep with next, Keep lines together

6

DRAFT
4/8/2011

9.   This Agreement contains the entire agreement between Zimmer and Kresch regarding settlement of Zimmer's claims against Kresch in the Action.  All prior or contemporaneous oral or written understandings of Zimmer and Kresch are superseded by the express contents of this Agreement.  In particular and without limiting the generality of the foregoing, the parties have agreed upon no restriction regarding disclosure of the terms of this Agreement.

8.   This Agreement may be modified only by a written instrument executed by Zimmer and Kresch.

9.   on full execution of this Agreement by both parties, and upon Zimmer's verification of Kresch's compliance with Paragraphs 1-3 of this Agreement insert deadline, Zimmer will dismiss Kresch from the Action, without prejudice.

10.   This Agreement shall be construed and interpreted in accordance with the laws of the State of Indiana exclusive of its choice of law rules.  With respect to any future action which includes a claim of breach of this Agreement, the parties agree to submit to the exclusive jurisdiction (personal and subject matter) and venue of the United States Court for the Northern District of Indiana or, if federal jurisdiction does not exist, the Allen County, Indiana Superior Court in Fort Wayne, Indiana.  If any action or claim for the alleged breach of this Agreement is brought, the prevailing party shall be entitled to an award of his, her or its costs and attorneys' fees.

ZIMMER, INC.

By_____
Its_____

7

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at:  0.63" + Indent at:  0.88", Keep with next, Keep lines together

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at:  0.63" + Indent at:  0.88", Keep with next, Keep lines together

Formatted:  No bullets or numbering, Keep with next, Keep lines together

**DRAFT**
**4/8/2011**

ARI KRESCH


By_____
Printed _____


KRESCH/OLIVER, PLLC


By_____
Printed _____


KRESCH LEGAL SERVICES, P.L.C.


By_____
Printed _____

8

BDDB01 6622988v1